1  DAVID B. DEHNERT (CA BAR NO. 214243)
   DEHNERT LAW, PC
2  475 WASHINGTON BLVD.
   MARINA DEL REY, CALIFORNIA 90292
3  TELEPHONE: 310.822.3222
   FACSIMILE: 310.577.5277
4  EMAIL: DAVID@DEHNERTLAW.COM

5  LESTER J. MARSTON (CA BAR NO. 081030 )
   LAW OFFICE OF LESTER J. MARSTON
6  405 WEST PERKINS STREET
   UKIAH, CALIFORNIA 95482
7  TELEPHONE: 707-462-6846
   EMAIL: LJMARSTON@RMLAWOFFICE.NET

8

9  *ATTORNEYS FOR PLAINTIFFS*
   *APRIL JAMES, EUNICE SWEARINGER, STEVE BRITTON*
10 *AND ROUND VALLEY INDIAN TRIBES*

11

12                  **UNITED STATES DISTRICT COURT**

13              **NORTHERN DISTRICT OF CALIFORNIA**

14

15  APRIL JAMES, EUNICE SWEARINGER,        Case No.
    STEVE BRITTON, and ROUND VALLEY
16  INDIAN TRIBES,                          **COMPLAINT FOR DECLARATORY
                                            AND INJUNCTIVE RELIEF AND
17          Plaintiffs,                     MONEY DAMAGES**

18  v.                                      [42 U.S.C. § 1983]

19  MATTHEW KENDALL, Sheriff of Mendocino   <u>JURY TRIAL REQUESTED</u>
    County; COUNTY OF MENDOCINO;
20  WILLIAM HONSAL, Sheriff of Humboldt
    County; JUSTIN PRYOR, deputy of Humboldt
21  County Sheriff's Office; COUNTY OF
    HUMBOLDT; SEAN DURYEE, Commissioner
22  of the California Highway Patrol;
    CALIFORNIA HIGHWAY PATROL; and
23  DOES 1 through 50,

24          Defendants.

25

26

27

28

Plaintiffs April James, Eunice Swearinger, Steve Britton, and Round Valley Indian Tribes[1] allege as follows:

**INTRODUCTION**

1.      On July 22-23, 2024, law enforcement officers raided properties in and around Covelo, California, targeting marijuana cultivation sites, regardless of the properties' location on the Round Valley Indian Reservation ("Reservation") or the property owners' status as enrolled members of the Round Valley Indian Tribes. With no explanation of why they were raiding these properties, they destroyed plants, equipment, fences and other property. These law enforcement officers are part of a larger organization of law enforcement agencies, including multiple northern California county sheriff's offices, that raid marijuana cultivation operations in northern California and have raided tribal trust lands on the Reservation routinely for over a decade.

2.      The raids terrorized the community. They also violated the law. The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. Amend. IV. It is well established that a warrantless search is unreasonable under the Fourth Amendment. *Chong v. United States*, 112 F.4th 848 (9th Cir. 2024); *Payton v. New York,* 445 U.S. 573, 586 (1980). Yet despite these unlawful tactics and their harmful impact on the Tribe's community, Sheriff Kendall flaunts the operation as a success. He has stated publicly that there are plans for the same activities throughout northern California.

3.      Individual Plaintiffs April James, Eunice Swearinger, and Steve Britton ("Individual Plaintiffs") are members of the Round Valley Indian Tribes who own and live in properties raided by the Defendants. They were subjected to warrantless searches of their homes and properties and the destruction of their personal property.

4.      Plaintiff Round Valley Indian Tribes ("Tribe") is a federally recognized Indian Tribe with inherent sovereign authority to enact laws, establish a police force and to authorize Tribal police officers to investigate violations of federal, state and tribal law within the Reservation. The

---

[1] The Round Valley Indian Tribes was formerly known as the Covelo Indian Community of the Round Valley Indian Reservation.

Case No.  - Complaint

Tribe's inherent authority includes enacting laws that regulate the cultivation, possession and use of cannabis on the Reservation. The Tribe licensed Individual Plaintiffs to cultivate, possess, and use cannabis on the Reservation for personal medical use, under a tribal regulatory scheme that prohibits non-medical cannabis use.

5. Public Law 280 delegated federal authority to California to prosecute crimes committed by Indians in Indian country. *See* 28 U.S.C. § 1360. California regulates cannabis and allows citizens to cultivate, possess and use cannabis, but those regulatory laws cannot be enforced against Indians on their reservations. *See California v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987) ("*Cabazon*"). Defendants' reliance on  Public Law 280 to justify raids on the Reservation contravenes long standing recognition of tribal sovereignty and federal common law, which prohibit state enforcement of regulatory laws against Indians on Indian reservations. *Chemehuevi Indian Tribe v. McMahon*, 934 F.3d 1076 (9th Cir. 2019); *Williams v. Lee*, 358 U.S. 217 (1959).

6. Individual Plaintiffs, along with the Tribe on behalf of its members (collectively, "Plaintiffs"), seek declaratory and injunctive relief to prevent Mathew Kendall, Sheriff of Mendocino County, Mendocino County, William Honsal, Sheriff of Humboldt County, Humboldt County, Sean Duryee, Commissioner of California Highway Patrol, and California Highway Patrol from conducting illegal raids on the Reservation. These actions include the illegal search, seizure, and destruction of property based on the erroneous claim that California holds regulatory jurisdiction over Indians in Indian country. Plaintiffs also seek to protect the civil right of Indians to be free from state regulation and control while engaging in activities on their reservations authorized and licensed by their tribal government.

7. Individual Plaintiffs seek damages against the Defendants for violations of their rights under the Fourth Amendment to the United States Constitution, the California Constitution, state law and 42 U.S.C. § 1983 after Defendants' unlawful searches, seizures and destruction of the Individual Plaintiffs' property. The Defendants' unlawful actions also violated federal common law, which prohibits the enforcement of state and local laws against Indians while on their reservation absent a congressional statute that authorizes such enforcement.

8.      Defendants Sheriff Kendall and Mendocino County, acting through the Sheriff's Office, has withheld law enforcement services on the Reservation, and in particular, intentionally ordered or caused Mendocino County Sheriff's deputies to ignore or not respond to calls after the Tribe on July 24, 2024, issued a cease-and-desist order to Defendant Kendall to stop raiding trust lands, located on the Reservation. After that cease-and-desist order, County Sheriff's deputies responded to calls only sporadically and often very late after receiving a call for service. In doing so, the Defendants and each of them deprived the Individual Plaintiffs and the Tribe of the equal protection of the law in direct violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

## JURISDICTION AND VENUE

9.      This Court's jurisdiction over the Plaintiffs' claims is based upon the following:

(a)      This Court has original jurisdiction under 28 U.S.C. § 1331 and § 1362, as this action arises from violations of the Plaintiffs' rights guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution, and for violations of the federal common law of trespass on Indian lands, pursuant to, inter alia, 25 U.S.C. § 345 and 28 U.S.C. § 1353, and the comprehensive regulatory scheme promulgated by the Department of Interior ("Interior") pursuant to these federal statutes, Part 169, Title 25 of the Code of Federal Regulations, and the present suit involves the possessory interests and rights of the Plaintiffs in their trust allotments secured by Act of Congress, for which the United States, as title holder, has enacted continuing and ongoing protections.

(b)      This Court has jurisdiction under 42 U.S.C. § 1983 because the claims arise from Defendants' violations of the Plaintiffs' rights guaranteed under the Fourth Amendment to the United States Constitution and the Indian Commerce Clause, U.S. Const. art. I, § 8.

(c)      This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 because the Plaintiffs' state law claims arise under a common nucleus of operative facts upon which Plaintiffs' federal law claims are based.

(d)      On December 15, 2024, Plaintiffs timely filed administrative tort claims with the County of Mendocino and the County of Humboldt. Both counties issued notices

Case No.  - Complaint

rejecting Individual Plaintiffs' claims on February 7, 2025, and March 19, 2025. Plaintiffs have exhausted all state law administrative remedies. Cal. Gov't. Code §§ 913, 945.6(a)(1).

10.     Venue is appropriate in this Court under 28 U.S.C. §§ 1391(a)(1), (a)(2), and (b)(1) because Defendants Mendocino County and Humboldt County are within the boundaries for this Court, and Sheriffs Kendall and Honsal, and Justin Pryor reside in this District, and because all of the remaining defendants, whose identities will be determined through discovery, are employed by the Sheriff's offices in this District or reside in this District.

## PARTIES

11.     Plaintiff Round Valley Indian Tribes is a federally recognized Indian Tribe in Mendocino County organized under the provisions of the Act of June 18, 1934 (48 Stat. 984), commonly known as the Indian Reorganization Act ("IRA") and codified at 25 U.S.C. § 5101.

12.     Individual Plaintiffs April James, Steve Britton and Eunice Swearinger are enrolled members of the Tribe. Ms. James and Ms. Swearinger are the beneficial owners of and reside on allotted trust lands; Mr. Britton resides on allotted trust lands owned by his granddaughter. These allotted trust lands are within the boundaries of the Reservation where Defendants raided their homes and properties.

13.     Defendant Matt Kendall is Sheriff of Mendocino County. At all relevant times, he was acting under the color of state law within the course and scope of his duties as Sheriff of Mendocino County, and as an agent and employee of Mendocino County. He is sued in his individual and official capacities.

14.     Defendant Mendocino County is a political subdivision of the State of California.

15.     Defendant William Honsal is Sheriff of Humboldt County. At all relevant times, he was acting under the color of state law within the course and scope of his duties as Sheriff of Humboldt County, and as an agent and employee of Humboldt County. He is sued in his individual and official capacities.

16.     Defendant Humboldt County is a political subdivision of the State of California.

17.     Defendant Sean Duryee is Commissioner of the California Highway Patrol ("CHP"). At all relevant times, he was acting under the color of state law within the course and scope of his

duties as Commissioner of the CHP, and as an agent and employee of the CHP. He is sued in his individual and official capacities.

18.    Defendant California Highway Patrol is a law enforcement agency of the State.

19.    Defendant Justin Pryor is a deputy of the Humboldt County Sheriff's Office. At all relevant times, he was acting under color of state law within the course and scope of his duties as a deputy of Humboldt County Sheriff's Office, as an agent and employee of Humboldt County. He is sued in his individual and official capacities.

20.    The true names and capacities of defendants DOES one through fifty are unknown to the Plaintiffs, and the Plaintiffs will seek leave of Court to amend this complaint to allege such names and capacities as soon as they are ascertained.

## GENERAL ALLEGATIONS

**Round Valley Indian Tribes and the Round Valley Indian Reservation**

21.    The Tribe is a confederation of small tribes: the Yuki, Wailacki, Concow, Little Lake Pomo, Nomlacki, and Pit River. The Round Valley Indian Reservation was established by the United States Indian Office in 1856 as the Nome Cult Indian Farm. The boundaries of the Reservation were expanded beyond the Farm in 1858 to encompass approximately 25,000 acres. By order of the President, an additional 6,000 acres were added to the Reservation on March 30, 1870. On March 3, 1873, Congress enacted legislation increasing the size of the Reservation to approximately 102,118 acres. (Act of March 3, 1873, 17 Stat. 633). *Russ v. Wilkins*, 624 F.2d 914 (9th Cir. 1980).

22.    On February 8, 1887, as part of the national policy to bring an end to the reservation system and to assimilate Indians into white society, Congress passed the General Allotment Act, 25 U.S.C. § 331-34. The Allotment Act authorized Indian agents to subdivide reservations into 60, 80, and 180 acre parcels and to convey those parcels to adult Indians to be owned by the United States of America in trust for those individual Indians for a twenty-five year period and then upon the expiration of the 25 years convey title to the land to the Indians in fee. Lands not allotted could be, and were, sold to non-Indian settlers and some fee-patented lands were lost for failure to pay property taxes.

23.    On October 1, 1890, Congress passed "An Act to provide for the reduction of the Round Valley Indian Reservation, in the State of California, and for other purposes" ("Act of 1890"). The Act of 1890 provided that a portion of the Reservation was to be allotted in ten-acre tracts to individual Indians and that additional lands were to be held for the Indian community in common. All claims by non-Indians within these allotted portions were to be appraised and compensated. The remainder of the Reservation was to be surveyed into 640-acre tracts and put up for sale with the proceeds, after deduction of certain expenses, placed in the Treasury of the United States to the credit of the Indians. The Act of 1890 appointed a commission to carry out the actual division and allotment of the Reservation. The commission allotted 42,105.56 acres to 1,034 Indians in the southwest portion of the Reservation and offered the rest at public sale.[2] An additional 36,692.23 acres was allotted to 619 Indians. *Id*.

24.    Only about 1,200 acres out of the 63,680 acres of the relinquished portions of the Reservation opened for sale and non-Indian settlement were sold. Pursuant to the Act of February 8, 1905, 33 Stat. 706, the unsold portions of the 63,680 acres were opened to homestead entry and settlement; the land remaining unclaimed after five years was to be sold.

25.    In 1934, Congress enacted the IRA to reverse the effects of the allotment policy. Under the IRA, the different tribes living on the Reservation and in the Round Valley elected the first Tribal Council of the Tribe after adopting the Constitution of the Round Valley Indian Tribes, which was approved by the Secretary of the Interior ("Secretary") on December 16, 1936.

26.    On February 11, 1947, the Secretary issued an order of restoration, pursuant to the IRA, that added approximately 7,531 acres of vacant land in random parcels of 140 acres each to the Reservation for tribal trust ownership. This presented the problem of "checkerboard jurisdiction" denounced by the Supreme Court in *Seymour v. Superintendent*, 368 U.S. 351, 358 (1962) and *Moe v. Confederated Salish & Kootenai Tribes*, 425 U.S. 463, 478 (1976). Checkerboard jurisdiction likely results in an inconvenient requirement that law enforcement must

---

[2] *See* General Data Concerning Indian Reservations, Commissioner of Indian Affairs (Oct. 15, 1929).

Case No.  - Complaint

consult tract books to determine the land status where they believe criminal activity occurred. *See Russ v. Wilkins*, 624 F.2d 914, 932 (9th Cir. 1980) (Hoffman, dissent).

27.     Today, the Reservation, in what is now northeastern Mendocino County, consists of a contiguous land base and discontinuous parcels of trust lands in Round Valley and includes the town of Covelo. The total area of Reservation trust lands is about 36,000 acres.

28.     The Tribe is the beneficial owner of the Reservation, which includes all discontinuous tribal trust lands and trust allotments. Despite the discontinuous pattern of these tribal properties, all lands within the boundaries of the Reservation is "Indian country," pursuant to 18 U.S. § 1151.

29.     The Tribe adopted a revised Constitution on August 3, 1994 ("Round Valley Constitution"), which was approved by the Secretary pursuant to the authority delegated to the Secretary under the IRA, as amended, and delegated to the Superintendent of the Central California Agency, Bureau of Indian Affairs by 230 D.M. 2.4.

30.     The Round Valley Constitution establishes the Tribal Council ("Tribal Council") as the Tribe's governing body with legislative powers to enact laws, regulations, and policies through ordinances, resolutions and other legislative actions on behalf of the Tribe.

31.     On August 8, 2006, the Tribal Council enacted and later amended the Compassionate Use Ordinance, regulating medical cannabis cultivation and use by tribal citizens on the Reservation. The Ordinance explicitly prohibits interpreting it to allow the imposition of State civil regulatory laws on the Reservation.  A true and correct copy of the Compassionate Use Ordinance is attached as **Exhibit A**.

**Public Law 280 and Civil Regulatory Jurisdiction**

32.     The Indian Commerce Clause vests Congress with exclusive authority over Indian commerce and affairs. U.S. Const. art. I, § 8; *Haaland v. Brackeen*, 143 S.Ct. 1609, 1627-28 (2023). Absent express authorization from Congress, the states and their political subdivisions lack civil regulatory jurisdiction over Indians or their activities on their reservations. *McClanahan v. Arizona Tax Comm'n,* 411 U.S. 164, 171, (2023). There is no statutory authority granting the State of California or any of its political subdivisions civil jurisdiction over Indians for conduct occurring

Case No.  - Complaint

on their reservations. *Cabazon*, 480 U.S. at 210-11.

33.     18 U.S.C. § 1151(a) defines "Indian country" as: "[A]ll land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation . . . . and (c) *all Indian allotments*, the Indian titles to which have not been extinguished[.]" Congress defined Indian country "broadly to include formal and informal reservations, dependent Indian communities, and *Indian allotments*, whether restricted or held in trust by the United States." *Oklahoma Tax Comm'n v. Sac and Fox Nation*, 508 U.S. 114, 123 (1993). Whether or not land is located within "Indian country" is significant because it determines which government, federal, state or tribal, can enforce its laws against Indians in Indian country.

34.     Under Public Law 280, California has limited jurisdiction over Indian country, depending on whether the state law at issue prohibits or regulates conduct. *Cabazon*, 480 U.S. at 209. If a California law generally prohibits certain conduct, California has criminal jurisdiction under 18 U.S.C. § 1162 to enforce its law against individual Indians. Conversely, if a California law merely *regulates* conduct and otherwise *permits* the conduct at issue, i.e. "civil/regulatory laws," California has no jurisdiction within Indian country to enforce that law. *Id.* For example, state laws regulating the licensing and registration of vehicles within the state merely regulate the otherwise permissible conduct of driving, and, therefore, are considered civil/regulatory, under which the state may not assert jurisdiction over tribal members within Indian country. *Chemehuevi Indian Tribe*, 934 F.3d at 1078

35.     Public Law 280 authorized California to assume criminal jurisdiction over offenses committed in Indian country and granted state courts jurisdiction to hear civil cases between Indians and between Indians and non-Indians arising in Indian country, but it did not grant the State the authority to enforce its regulatory laws against Indians on their reservations.

36.     In 1996, California became the first state to legalize medical cannabis through the Compassionate Use Act (Proposition 215), codified in Health and Safety Code § 11362.5. In November 2016, voters approved the Adult Use of Marijuana Act (Proposition 64), codified in Health and Safety Code § 11358, legalizing recreational cannabis use.

Case No.  - Complaint

37.     California permits the cultivation, possession, and use of cannabis under Health and Safety Code §§ 11362.5 and 11358 (collectively, "H & S Code"). These provisions establish civil and regulatory requirements, not prohibitory or criminal statutes, and therefore do not apply to California Indians cultivating cannabis in Indian country.

**Defendants' Unlawful Raids of Plaintiffs' Trust Properties**

38.     On July 22-23, 2024, the Defendants, and each of them, through their deputies and officers, collaborated in planning, organizing and executing raids on the Plaintiffs' properties on the Reservation in Indian country, without probable cause and without valid search warrants. Defendants knowingly and intentionally, or with reckless disregard for the truth, misstated or omitted information in seeking an arrest warrant for each Plaintiff. Defendants searched, seized and destroyed the Individual Plaintiffs' property, which included tearing up land, structures, hundreds of cannabis plants, part of a vegetable garden, and a fence with a tractor, and also damaging an electric gate, interior doors, trim and locks of a home.

39.     Defendants failed to notify the Tribal Council, Tribal Police, any Tribal official, or any of the Individual Plaintiffs before, during or after the illegal raids of the Plaintiffs' properties on the Reservation in Indian country.

April James

40.     One of the properties raided is an approximately 1.25-acre trust allotment owned by Plaintiff April James located approximately one-quarter mile off of California State Highway 162. A true and correct copy of the Title Status Report prepared by the Bureau of Indian Affairs ("BIA") listing April James as owner of the 1.25-acre trust allotment is attached as **Exhibit B**. Plaintiff James, a 48-year-old grandmother who suffers from arthritis and a degenerative disc disorder for which she has had surgery, makes her own medicinal cream with the cannabis she cultivates to ease the daily pain due to her disorder. She had two structures on her trust allotment within which she grew cannabis plants which the Defendants destroyed with a tractor by pushing the soil and all plants and improvements into a pile of dirt and rubbish.

41.     Plaintiff James was shocked to hear loud knocking on the front door of her home on the morning of July 22, 2024. When she opened the door with her 5-year-old grandson standing

1  behind her she faced a handful of deputies with their guns drawn. They said they had a search
2  warrant but did not present it, then entered her home and searched it for about an hour after telling
3  Ms. James, her daughter, grandson and 13-year-old autistic nephew to remain in place during the
4  search. When asked by Ms. James what probable cause they had to raid her trust allotment, deputies
5  responded that there were environmental violations that they were searching for such as using river
6  water for plants. Ms. James has a well on her property. They also said that growing cannabis is
7  illegal and that they could charge her with the sale and manufacturing of illegal drugs. Deputies
8  also said they had the right to search her home for parole violations, but neither Ms. James nor any
9  other member of her household has a criminal record, and they were not involved in conduct that
10  would lead law enforcement to reasonably believe they were engaged in criminal conduct.

11      42.     The raid of Plaintiff James's trust allotment involved a disproportionate use of force
12  that caused unnecessary destruction, leaving Plaintiff James and her family, including children,
13  physically harmed and emotionally distressed. They now live in fear of deputies targeting them
14  again and returning without notice or legal justification, detaining them after holding them at
15  gunpoint, restricting their movement in and use of their home again and destroying their property.
16  Plaintiff James has furthermore suffered financial losses as a result of the Defendant's conduct.

17  <u>Eunice Swearinger</u>

18      43.     On July 22, 2024, multiple sheriff's deputies entered 86-year-old Plaintiff Eunice
19  Swearinger's home while she was away on an errand, then stopped her from reentering her trust
20  allotment when she returned. A true and correct copy of the Title Status Report prepared by the
21  BIA listing Eunice Swearinger as an owner of about 2.285 acres of the trust allotment is attached
22  as **Exhibit C**. The deputies did not present a search warrant to Ms. Swearinger. They entered
23  interior rooms of the home by breaking through locked doors and damaged two doors, trim,
24  doorknobs and locks in the process. The deputies left after searching the home but failed to present
25  a search warrant to Plaintiff Swearinger. They did not take anything.

26      44.     Multiple deputies returned to Plaintiff Swearinger's trust allotment the following
27  day in pickup trucks and, without notice and without saying a word to Ms. Swearinger, scraped her
28  cannabis plants and all related improvements on her trust allotment into a pile with a tractor. While

1    destroying the cannabis plants, Defendants destroyed part of Ms. Swearinger's vegetable garden by

2    cutting onions, watermelons and zucchinis. Several of Ms. Swearinger's grandchildren were at the

3    house and were scared by the massive presence of law enforcement, including the large guns they

4    carried and held while guarding the unlawful destruction of their grandmother's property.

5        45.    Despite the Defendants' destruction of her property, Ms. Swearinger was able to

6    salvage several cannabis plants from the pile created by the Defendants. She replanted several plants

7    and watered them. The following day, law enforcement officials returned to her trust allotment and,

8    without notice again, pulled out the newly planted cannabis plants.

9        46.    Plaintiff Swearinger uses cannabis ointment to treat pain caused by arthritis and

10   injuries sustained in a traffic accident leaving her disabled and unable to walk properly.

11       47.    The raid of Plaintiff Swearinger's trust allotment involved a disproportionate use of

12   force that caused unnecessary destruction, leaving Plaintiff Swearinger and her family, including

13   children, physically harmed and emotionally distressed. They now live in fear of deputies targeting

14   them again and returning without notice or legal justification, refusing them entry to their home

15   again and destroying their property. Plaintiff Swearinger has furthermore suffered financial losses

16   as a result of the Defendant's conduct.

17   Steve Britton

18       48.    Plaintiff Steve Britton, a rancher, was at home with his son on July 23, 2024, when

19   Sheriff's deputies, without notice or a search warrant, raided the trust allotment where he lives with

20   his wife. The deputies ordered Plaintiff Britton and his son to leave the trust allotment while

21   deputies searched his trailer and two Conex storage containers without probable cause. After

22   searching the trust allotment, deputies destroyed cannabis plants, cultivation structures and

23   equipment, fencing and an electric gate on the property.

24       49.    The 5-acre trust allotment raided by Defendants is owned by Mr. Britton's

25   granddaughter, Mary Mae Azbill McKenna. A true and correct copy of the Title Status Report

26   prepared by the BIA listing Steve Britton's granddaughter, Mary Mae McKenna Azbill, as owner

27   of the 5-acre trust allotment is attached as **Exhibit D**.

28       50.    The raid of Plaintiff Britton's trust allotment involved a disproportionate use of force

that caused unnecessary destruction, leaving Plaintiff Britton and his family, including children, physically harmed and emotionally distressed. They now live in fear of deputies targeting them again and returning without notice or legal justification, refusing them entry to their home again and destroying their property. Plaintiff Britton has furthermore suffered financial losses as a result of the Defendant's conduct.

51.     The search warrant presented to Plaintiff James after the Defendants unlawfully searched, seized and destroyed her property stated that the search warrant was based on an affidavit by Humboldt County Sheriff's Office Deputy Justin Pryor stating that there was probable cause to seize Plaintiff James' cannabis plants pursuant to Penal Code §§ 1524, 1528(a), 1536, and § 11472 of the H & S Code. A true and correct copy of the search warrant is attached as **Exhibit E**. Defendant Pryor knowingly and intentionally, or with reckless disregard for the truth, misstated or omitted information in seeking an arrest warrant for each Individual Plaintiff.

52.     There is no indication in the search warrant that the Plaintiffs' properties are within Indian country and the Tribe's jurisdiction or that the Tribe regulates cannabis cultivation under the Compassionate Use Ordinance.

53.     On information and belief, the Defendants relied on similar search warrants to search the trust properties of Plaintiffs Swearinger and Britton and to seize and destroy the cannabis plants on those trust properties.

54.     During the raids of the Individual Plaintiffs' properties, Sheriff's deputies stated to one or more of the Plaintiffs that Public Law 280 did not apply to them because they were raiding "heirship land" under the misunderstanding that trust allotments are not included in the definition of Indian country. Nevertheless, the Individual Plaintiffs' properties are trust lands that fall within the definition of Indian country, and Public Law 280 does not authorize the Defendants' conduct, as alleged herein, on those properties and similarly situated trust lands.

55.     Despite being prohibited under Public Law 280 from enforcing California's civil regulatory cannabis laws against Indians on the Reservation, Defendants have demonstrated a pattern and practice of unlawful and unconstitutional conduct. They have engaged in and continue to engage in a pattern and practice of unlawful police actions and excessive force directed at, or

with a disproportionate impact on Indians on the Reservation.

56.    The Defendants, through their acts or omissions, have engaged in a pattern or practice that resulted in a pattern or practice by Mendocino County Sheriff's Office deputies and law enforcement officers from other Sheriff's offices and law enforcement agencies committing illegal raids of Indian-owned properties to enforce California's regulatory cannabis laws against Indians on the Reservation and in Indian country. For example, on July 15, 2022, Mendocino County Sheriff's deputies served a search warrant on a tribal trust allotment owned by Tribal member Gary Cordova that resulted in the illegal search, seizure and destruction of property, including the destruction of plants, structures and other property. A true and correct copy of the search warrant used for the raid on Mr. Cordova's trust allotment on the Reservation is attached as **Exhibit F**.

57.    Defendants and other law enforcement officers have confirmed in press releases that they have raided tribal trust lands on the Reservation with impunity for over a decade. MendoFever staff, *Mendocino Cannabis Crackdown Results in 11 Tons of Product, 30k Plants*, MendoFever, Oct. 8, 2024;[3] MendoFever staff, *Mendocino Sheriff Briefs Community on Round Valley Marijuana Enforcement*, MendoFever, Aug. 4, 2024;[4] MendoFever staff, *California's Cannabis Taskforce Targets Covelo Grow Sites Eradicating an Estimated $45 Million of Product*, MendoFever, Sep. 2, 2023;[5] Shafiq Najib, *MSCO: Unlawful marijuana farm in Covelo abolished, multiple people detained Thursday*, Jul. 30, 2021.[6]

58.    Defendant Kendall has posted on Facebook about targeting cannabis raids on the Reservation over several years, focusing on the "most egregious violators" of illegal marijuana grows in Round Valley, specifically targeting Indians with search warrants based on false

---

[3] *Available at* https://mendofever.com/2024/10/08/mendocino-cannabis-crackdown-results-in-11-tons-of-product-30k-plants/.

[4] *Available at* https://mendofever.com/2024/08/04 mendocino-sheriff-briefs-community-on-round-valley-marijuana-enforcement/.

[5] *Available at* https://mendofever.com/2023/09/02/californias-cannabis-taskforce-targets-covelo-grow-sites-eradicating-an-estimated-45-million-of-product/.

[6] *Available at* https://krcrtv.com/north-coast-news/eureka-local-news/msco-unlawful-marijuana-farm-in-covelo-abolished-thursday.

Case No.  - Complaint

information, and admitting some targeted properties included "tribal lands." True and correct copies of several of Defendant Kendall's Facebook posts are attached as **Exhibit G**.

59.    Defendants' actions caused Plaintiffs James, Swearinger and Britton emotional distress and ongoing injury, leaving them fearful for their safety and that of their families. They worry about potential gunpoint raids, destruction of their homes, gardens and yards, home invasions, forced displacement and damage to personal property and trust land. These fears persist as they continue to see helicopters over their trust properties and Sheriff's deputies driving past their homes.

60.    Defendants' pattern of raiding trust properties on the Reservation without the Tribe's knowledge or cooperation is disproportionately harmful to the Tribe and its members.

61.    When the pattern and/or practice of police misconduct goes unchecked on the Reservation, it undermines the community's trust and cooperation between law enforcement officers and the Tribe, Tribal police and the people they serve. This is especially true on the Reservation, where there are significant law enforcement challenges.

62.    Unless restrained by the Court, Defendants' pattern or practice of unlawfully raiding properties and unconstitutionally searching, seizing and destroying property that disparately impacts Indians will continue and create greater law enforcement challenges on the Reservation.

63.    On July 24, 2024, the Tribe, through the Tribe's legal counsel, issued a cease-and-desist order to Defendant Sheriff Kendall to stop the illegal raids on the Reservation. The raids ended, but Defendants Kendall and Mendocino County refused to perform law enforcement services on the Reservation in an exaggerated and retaliatory response to the cease-and-desist order issued by the Tribe.

64.    The refusal by Defendant Kendall to respond to calls for emergency law enforcement responses endangered lives and the community and violated Mendocino County Sheriff's Office policies and the law.

65.    Defendant Kendall is employed by the County of Mendocino, in the Mendocino County Sheriff's Office. Sheriff Kendall serves as the head of the Sheriff's Office and is the top spokesperson for the Sheriff's Office. He is responsible for managing, supervising, and disciplining

Case No.  - Complaint

all employees in the Sheriff's Office, including deputies.

66.     Defendant Honsal is employed by the County of Humboldt, in the Humboldt County Sheriff's Office. Sheriff Honsal serves as the head of the Sheriff's Office and is the top spokesperson for the Sheriff's Office. He is responsible for managing, supervising, and disciplining all employees in the Sheriff's Office, including deputies.

67.     Defendant Duryee is employed by the State of California, in the CHP. Commissioner Duryee serves as the head of the CHP and is the top spokesperson for the CHP. He is responsible for managing, supervising, and disciplining all CHP employees, including officers.

68.     Plaintiffs are informed and believe and thereupon allege that Defendant DOES 1-50, and each of them, whether individual, corporate, associate or otherwise, are unknown to Plaintiffs at this time, who therefore sue said Defendants by such fictitious names. Plaintiffs will amend this Complaint to show their true names and capacities, together with appropriate charging language, when such information has been ascertained. Plaintiffs will file DOE amendments, and/or ask leave of court to amend this Complaint to assert the true names and capacities of these Defendants when they have been ascertained.

69.     Plaintiffs are informed and believe, and upon, such information and belief allege, that each Defendant designated as a DOE was and is in some manner, negligently, wrongfully, or otherwise responsible and liable to Plaintiffs for the injuries and damages hereinafter alleged and that Plaintiffs' damages as herein alleged were proximately caused by their conduct.

70.     Plaintiffs are informed and believe, and thereupon allege, that at all times material herein that the Defendants, including the Doe Defendants, each and all of them, were the agents, servants and employees, or ostensible agents, servants or employees of Defendants Mendocino County, Humboldt County and CHP, who control, supervise, manage and are responsible for the Mendocino County Sheriff's Office, Humboldt County Sheriff's Office, and CHP, and Mendocino County, Humboldt County and CHP are therefore directly and vicariously liable for the conduct of Defendants Kendall, Honsal, Pryor and Duryee, as well as all Defendants; all of the Defendants were acting within the course and scope of said agency and employment or ostensible agency and employment. Thus, Defendants Mendocino County, Humboldt County and CHP are liable for the

Case No.  - Complaint

conduct of its employees towards Plaintiffs under the doctrine of respondeat superior, as its employees' conduct on July 23-24, 2024, and before and after the events that occurred on those days, were not isolated incidents of personal animus by the individual Defendants towards the Plaintiffs, but rather part and parcel of the manner in which the Defendant counties and CHP allowed and enabled the illegal activities as well as violations of Sheriff's and CHP polices and rules, thus passing the foreseeability test required to find vicarious liability.

71.     Plaintiffs are further informed and believe, and thereupon allege, that at all times relevant hereto, Defendants, and each of them, acted in concert and in furtherance of the interests of each other Defendant.

72.     At all relevant times, Defendants or their predecessors in office have acted or failed to act, as alleged herein, under the color of state law.

## FIRST CAUSE OF ACTION

### Unlawful Assertion of Jurisdiction
### (Public Law 280)

### (Against all Defendants)

73.     Plaintiffs incorporate by reference all foregoing paragraphs as if set forth here.

74.     The only federal law that grants the Defendants, and each of them, any authority to enforce State law against the Individual Plaintiffs on the Reservation is Public Law 280. Public Law 280 however did not grant the Defendants any authority or jurisdiction to enforce the State's civil regulatory cannabis laws, set forth in the H & S Code, against the Individual Plaintiffs on the Reservation. The Defendants' raids, searches, seizures, and destruction of the Individual Plaintiffs' trust allotments, as alleged herein, was therefore, illegal and in direct violation of the Fourth Amendment and Indian Commerce Clause of the United States Constitution, federal common law and Title 42 of the United States Code § 1983.

75.     An actual controversy exists between the Plaintiffs and Defendants, in that the Tribe and the Individual Plaintiffs contend that Public Law 280 did not grant to California or its political subdivisions the authority to enforce its civil/regulatory laws against Indians on their Reservations and in Indian country, that the provisions of the H & S Code relied on by the Defendants to raid

Plaintiffs' trust allotments are civil/regulatory in nature, and that, therefore, the Defendants had no jurisdiction to search, seize and destroy the Individual Plaintiffs' properties, whereas Defendants contend that they have jurisdiction to obtain a search warrant to search and destroy Plaintiffs' personal and trust property based on a felony violation of California H & S Code § 11472 and to enforce California's cannabis laws against the Plaintiffs while on the Reservation.

76.    Unless this Court issues an order declaring that the Defendants have no authority or jurisdiction to search, seize and destroy Individual Plaintiffs' property for alleged violations of the H & S Code by Individual Plaintiffs and other Indians on the Reservation, the Defendants will continue to raid tribal trust land and trust allotments on the Reservation, even though federal Indian law clearly prohibits this intolerable and dangerous activity.

77.    Unless the Defendants are provisionally and permanently restrained and enjoined from searching and destroying the Individual Plaintiffs' and other Indians' property on the Reservation for violations of the H & S Code, Plaintiffs James, Swearinger and Britton will suffer severe and irreparable harm for which Plaintiffs have no plain, speedy or adequate remedy at law, in that the Plaintiffs will be subjected to State civil regulatory laws while on their Reservation, will be subject to illegal searches, seizures and destruction of their trust property and prosecution in state courts, and will be deprived of their federally protected right to be free of State regulation and control while engaging in cannabis activities on the Reservation.

78.    As a direct and proximate result of Defendants' actions, as alleged herein, Individual Plaintiffs have suffered damages in an amount exceeding $10,000.00 for the costs incurred to replace and repair their property, and Plaintiffs will continue to suffer additional damages of a nature and in amounts which will be proven at trial.

## SECOND CAUSE OF ACTION

### Infringement of the Tribe's Sovereignty
### (Interference with Tribal Self-Governance)

### (Against all Defendants)

79.    Plaintiffs incorporate by reference all foregoing paragraphs as if set forth here.

80.    The Defendants' unlawful exercise of jurisdiction through the enforcement of H &

S Code provisions in Indian country impermissibly interferes with the Plaintiff Tribe's sovereignty and its ability to enact and enforce laws regulating the cultivation of cannabis on its Reservation and to govern the Tribe by those laws.

81.     Through unlawfully obtained search warrants as the predicate to search, seize and destroy Plaintiffs' property on the Reservation, Defendants interfered with and continue to interfere with the Tribe's ability to govern itself and its members by preventing the Tribe from determining to what extent and under what conditions, if any, tribal members will be able to cultivate, possess and use cannabis on the Reservation.

82.     An actual controversy exists between the Plaintiffs and the Defendants, in that the Tribe and the individual Plaintiffs contend that the Defendants' enforcement of provisions of the H & S Code against them impermissibly interferes with the ability of the Plaintiffs to govern themselves on their Reservation, while the Defendants contend that their actions do not constitute an impermissible interference with the Tribe's self-governance.

83.     The Tribe has been irreparably injured by the Defendants' unlawful assertion and exercise of jurisdiction on the Reservation and unless the Defendants, their officers, deputies, agents and employees are provisionally and permanently restrained and enjoined from enforcing the provisions of the H & S Code against the Plaintiffs and other Indians on the Reservation, Plaintiffs and other Indians on the Reservation will face the threat of continued raids, searches and seizures of their property, thus interfering with the Tribe's sovereignty and self-governance on the Reservation, and the Individual Plaintiffs' right to be free of state regulation and control, causing severe and irreparable injury for which the Plaintiffs have no plain, speedy or adequate remedy at law.

## THIRD CAUSE OF ACTION

### Fourth Amendment – Unlawful Search and Seizure
### (42 U.S.C. § 1983)

### (Against all Defendants)

84.     Plaintiffs incorporate by reference all foregoing paragraphs as if set forth here.

85.     By willfully engaging in the conduct alleged herein, Defendants violated the Fourth

Amendment rights of Plaintiffs James, Swearinger and Britton by subjecting them to unlawful searches of their trust properties. At no time prior to the searches of the trust properties of Plaintiffs James, Swearinger and Britton did Defendants present a search warrant. Only Plaintiff James received a search warrant after the search was completed and her property seized and destroyed based on an affidavit by Humboldt County Sheriff's Office Deputy Justin Pryor, who knowingly disregarded Public Law 280 and the Defendants' complete lack of authority and jurisdiction to obtain and execute a search warrant on Plaintiff James' Reservation property in Indian Country. Defendants had no probable cause, authority or jurisdiction to obtain and execute a search warrant or to search the properties of Plaintiffs James, Swearinger and Britton.

86.    Defendants also violated the Fourth Amendment Rights of Plaintiffs James, Swearinger and Britton by seizing and destroying their cannabis plants, hoop structures and related infrastructure used to cultivate the cannabis plants, in addition to damaging Plaintiff Swearinger's house and damaging Plaintiff Britton's wood fence and electric gate, without probable cause, authority or jurisdiction to support the seizure and destruction of their property. They relied erroneously on provisions of the H & S Code and Plaintiffs owning "heirship land," which they said was not Indian country to search, seize and destroy Plaintiffs' property.

87.    Defendants Kendall, Honsal and Duryee intentionally directed, approved and authorized the search, seizure and destruction of Plaintiffs James, Swearinger and Britton's property and knowingly disregarded Public Law 280 and the Plaintiff Tribe's sovereignty and right to self-governance.

88.    Under the Tribe's Compassionate Use Ordinance, Plaintiffs James, Swearinger and Britton had the right to cultivate cannabis on their trust allotments without interference by the Defendants.

89.    Plaintiffs James, Swearinger and Britton have suffered and will continue to suffer damages in excess of $10,000 to be proven at trial for cultivating cannabis on the Reservation in violation of the H & S Code.

90.    Individual Plaintiffs and Tribe have no plain, adequate, or complete remedy at law to address the wrongs described herein. The injunctive and declaratory relief sought by Plaintiffs is

Case No.  - Complaint

necessary to prevent continued and future irreparable injury.

## FOURTH CAUSE OF ACTION

### Unlawful Search and Seizure
### (Cal. Const. Art. I, § 13)
### (California Tort Claims Act, Cal. Gov't Code §§ 815.2, 820)
### (Against all Defendants)

91.    Plaintiffs incorporate by reference all foregoing paragraphs as if set forth here.

92.    Defendants Mendocino and Humboldt Counties, through Defendants Kendall, Honsal and Pryor, and Defendant CHP through Defendant Duryee, inflicted personal injury on Plaintiffs James, Swearinger and Britton by subjecting them to unreasonable searches and seizures and destruction of their personal property and homes without a valid warrant and without probable cause in violation of applicable California State law, including but not limited to Article I, Section 13 of the California Constitution and Penal Code 1523-1542.

93.    Defendants deprived Plaintiffs James, Swearinger and Britton of their property through warrantless unreasonable searches and seizures without probable cause, and deprived Plaintiff James of her freedom by subjecting her to an unreasonable detention without a warrant and without probable cause, all without the Plaintiffs' consent.

94.    Defendants' warrantless search, seizure and destruction of Plaintiffs James, Swearinger and Britton's property, and the detention of James, were substantial factors in causing Plaintiffs James, Swearinger and Britton severe pain, suffering, headaches, trauma, worry, anxiety, humiliation, embarrassment, and loss of liberty. As such, the Plaintiffs have suffered damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

### Bane Act
### (Cal. Civ. Code § 52.1)
### (California Tort Claims Act, Cal. Gov't Code §§ 815.2, 820)
### (Against all Defendants)

95.    Plaintiffs incorporate by reference all foregoing paragraphs as if set forth here.

96.    Defendants Mendocino and Humboldt Counties, through Defendants Kendall, Honsal and Pryor, and Defendant CHP through Defendant Duryee, interfered with Plaintiffs James, Swearinger and Britton's exercise and enjoyment of their rights under the United States and

California Constitutions.

97.      Defendants intentionally interfered with Plaintiffs' rights under the Fourth Amendment and Article 1, Section 13 of the California Constitution to be free from warrantless searches without probable cause. Defendants used threats, intimidation and force, including multiple deputies drawing their service weapons at the front door of Plaintiff James in front of her four-year-old grandson, to effect the warrantless search and seizure of Plaintiffs' properties. Defendants violated Plaintiffs' rights and refused to back down when Plaintiffs informed Defendants that Defendants were raiding trust lands and that they had no jurisdiction to do so, to which Defendants insisted they had jurisdiction over the Individual Plaintiffs' "heirship lands." Plaintiffs reasonably believed they would be arrested if they did not submit to the Defendants' unlawful search and seizure.

98.      Defendants detained Plaintiff James while conducting their warrantless search of her house and property and the seizure and destruction of her property.

99.      Mendocino County, Humboldt County and the CHP are vicariously liable for their deputies' and officers' misconduct pursuant to Government Code §§ 815.2, 820.

## SIXTH CAUSE OF ACTION

### Negligence

### (Against all Defendants)

100.      Plaintiffs incorporate by reference all foregoing paragraphs as if set forth here.

101.      Law enforcement officers owe a duty of care to the community, including Plaintiffs, to uphold the U.S. Constitution, the California Constitution, and applicable federal and state laws when applying for search warrants and seizing personal property.

102.      Law enforcement officers owe a duty of care to assess the scope of their authority and jurisdiction in enforcing California's cannabis laws under the H & S Code against Indians engaged in cannabis activities authorized and regulated by an Indian tribe on its reservation in Indian country, including Plaintiffs.

103.      Law enforcement officers owe a duty of care to community members, including Plaintiffs, to not conduct searches and seizures or detain individuals without probable cause.

Case No.  - Complaint

104.    The conduct of Defendants as set forth herein was tortious in that Defendants breached their duties of care to Plaintiffs.

105.    The negligence of Defendants Kendall, Honsal, and Duryee, as Sheriffs of Mendocino and Humboldt Counties, and Defendant Duryee of the CHP, caused Plaintiffs harm in the form of destroyed and damaged property, deprivation of liberty, the infliction of emotional distress—manifested through, in part, humiliation, embarrassment, anxiety, worry, emotional pain, suffering and trauma.

106.    As a result of the conduct of the Defendants alleged herein, Plaintiffs sustained and incurred loss of property and emotional damages.

107.    The Counties of Mendocino and Humboldt and the CHP are vicariously liable for the actions of the Defendant deputies and officers.

## SEVENTH CAUSE OF ACTION

**Violation of Fourteenth Amendment Equal Protection Rights Against Selective Enforcement (42 U.S.C. § 1983)**

**(Defendants Kendall, Mendocino County and Does 1-50)**

108.    Plaintiffs incorporate by reference all foregoing paragraphs as if set forth here.

109.    The Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution requires that all people be treated equally under the law without regard for their race or ethnicity.

110.    As such, the Equal Protection Clause prohibits law enforcement officers from selectively enforcing criminal laws because of their race or ethnicity.

111.    Indians living on reservations are citizens and residents of California and are entitled to the rights and privileges enjoyed by all state citizens and residents. *Acosta v. San Diego County*, 126 Cal.App.2d 455 (1954).

112.    Law enforcement officers owe a duty to Indians in Indian country to enforce the State's criminal prohibitory laws under Public Law 280.

113.    Defendant Kendall, as Sheriff of Mendocino County, Mendocino County and Does 1-50, intentionally or at least callously and recklessly disregarded calls for assistance to Indians on the Reservation and stopped providing law enforcement services to Indians on the Reservation

1    based on their race.

2        114.   Defendant Kendall, Mendocino County and Does 1-50 stopped law enforcement

3    activities on the Reservation after the Tribe's legal counsel issued a cease-and-desist order to Sheriff

4    Kendall on July 24, 2024, to cease illegal cannabis raids on Indians on the Reservation.

5        115.   This deprivation caused harm to the Plaintiffs.

6    **PRAYER FOR RELIEF**

7    WHEREFORE, Plaintiffs seek judgment and relief against the Defendants as follows:

8    i.        Award compensatory and punitive damages against all Defendants for the above

9              violations of federal and state law;

10   ii.      Award compensatory damages against Mendocino County, Humboldt County and

11             the CHP under the California Tort Claims Act;

12   iii.     Issue declaratory and injunctive relief against the Defendants preventing them from

13             enforcing State cannabis laws against Plaintiffs while engaging in cannabis activities

14             on the Reservation and requiring that Defendant Kendall and Mendocino County

15             enforce State criminal law and serve and protect Indians on the Reservation;

16   iv.     Award prejudgment interest on any award of damages to the extent permitted by

17             law;

18   v.      Award reasonable attorneys' fees, costs and disbursements, pursuant to 42 U.S.C. §

19             1988, Cal. Gov't Code § 52.1(h), Cal. Code of Civ. Proc. § 1021.5, and any other

20             applicable law; and

21   vi.     For such other and further relief as the Court may deem just and proper.

22

23             Respectfully submitted,

24             DEHNERT LAW, PC

25   DATED:  April 29, 2025     By:_____

26             David B. Dehnert (CA Bar No. 214243)

27             Dehnert Law, PC
               475 Washington Blvd.
               Marina Del Rey, CA 90292

28

1

2

3

LAW OFFICE OF LESTER J. MARSTON

By: _____
Lester J. Marston (CA Bar No. 081030)
Law Office of Lester J. Marston
405 West Perkins Street
Ukiah, CA 95482

*Attorneys for Plaintiffs April James, Eunice* Swearinger, Steve Britton and *Round Valley Indian Tribes*

# EXHIBIT A

## ROUND VALLEY INDIAN TRIBES
### *A Sovereign Nation of Confederated Tribes*

TRIBAL COUNCIL OFFICE
77826 COVELO ROAD
COVELO, CALIFORNIA 95428
PHONE: 707-983-6126
FAX: 707-983-6128



LOCATION: ON STATE HWY 162
ONE MILE NORTH OF COVELO
IN ROUND VALLEY
TRIBAL TERRITORY SINCE TIME BEGAN

**ROUND VALLEY RESERVATION ESTABLISHED 1856**

# COMPASSIONATE USE ORDINANCE

# OF THE

# ROUND VALLEY INDIAN TRIBES

# 2006

Approved: August 8, 2006
Previously Amended: June 12, 2007; June 19, 2012
Amendments Approved: August 1, 2013

# ROUND VALLEY INDIAN TRIBES
*A Sovereign Nation of Confederated Tribes*

TRIBAL COUNCIL OFFICE
77826 COVELO ROAD
COVELO, CALIFORNIA 95428
PHONE: 707-983-6126
FAX: 707-983-6128



LOCATION: ON STATE HWY 162
ONE MILE NORTH OF COVELO
IN ROUND VALLEY
TRIBAL TERRITORY SINCE TIME BEGAN

ROUND VALLEY RESERVATION ESTABLISHED 1856

# COMPASSIONATE USE ORDINANCE

# OF THE

# ROUND VALLEY INDIAN TRIBES

# 2006

Approved: August 8, 2006
Previously Amended: June 12, 2007; June 19, 2012
Amendments Approved: August 1, 2013



# COMPASSIONATE USE ORDINANCE
### of the
Round Valley Indian Tribes

## Contents

Purpose.................................................................................................Section 1

Definitions...........................................................................................Section 2

Findings...............................................................................................Section 3

Regulations..........................................................................................Section 4

Enforcement of Ordinance...................................................................Section 5

Jurisdiction/Police Procedures............................................................Section 6

Penalties..............................................................................................Section 7

Medicinal Use......................................................................................Section 8

Severability .........................................................................................Section 9

Effective Date ......................................................................................Section I 0

AMENDED 2020

COMPASSIONATE USE ORDINANCE
of the
Round Valley Indian Tribes

## Section 1 – PURPOSE

1.1 The Purpose and intent of this Ordinance is to civilly regulate those persons and lands within the Round Valley Indian Country, as it relates to the health, safety, and welfare of the Round Valley Indian Tribes.

1.2 The Ordinance seeks to do so in a manner that is consistent with California State law, and to balance the needs of medical patients and their caregivers for access to medical marijuana with the need to limit the harmful societal and environmental impacts that are sometimes associated with marijuana cultivation.

1.3 The Council finds that the Round Valley Indian Tribes' compassionate use ordinance, as amended on June 12, 2007 and then again om June 19, 2012, thereafter remained ambiguous, and seeks herein to clarify and apply that law to a new factual and legal settings. This amendment to the Compassionate Use Ordinance shall not be deemed to constitute a substantive change in the law, but rather to clarify the previous Compassionate Use Ordinance as amended, and should therefore be applied retroactively to June 19, 2012.

1.4 Nothing in this Ordinance shall operate or be construed to allow the use or diversion of marijuana for nonmedical purposes or to allow any activity relating to the cultivation, distribution, or consumption of marijuana that is otherwise illegal under State law. Nor shall anything in this Ordinance operate or be construed to allow the State to impose its civil regulatory or land use laws in Round Valley Indian Country.

## Section 2 – DEFINITIONS

2.1 **"Council"** or **"Tribal Council"** Shall mean the Round Valley Indian Tribal Council, the governing body of the Round Valley Indian Tribes.

2.2 **"Cultivation"** shall mean to grow marijuana and shall include possession of any live marijuana plant within the exterior boundaries of the Reservation.

2.3 **" Exempted Person"** shall mean an individual, tribal member or not, in possession of a State Pre-Identification Card.

2.4 **" Indian Country"** shall mean all such lands defined by 18 U.S.C. 1151, including without limitations the Round Valley Indian Reservation and the entirety of lands, territories, waters, and airspace therein.

2.5 **"Member"** or **"Tribal Member"** shall mean an enrolled member of the Round Valley Indian Tribes. "Non-Member" shall mean a person who is not an enrolled member of the Round Valley Indian Tribes.

2.6 **" Ordinance"** shall mean Compassionate Use Ordinance.

2.7 **" Person"** shall mean all people, tribal members or non-members, within Round Valley Indian Country or under the jurisdiction of the Round Valley Indian Tribes.

2.8 " Primary Caregiver" shall mean the individual designated by the person exempted under this Ordinance who has consistently assumed responsibility for the health and safety of that person.

2.8.1 "Caretaker" shall mean two persons allowed, with proper toilet facilities, to maintain the grow site with the permission of the property owner.

2.9 " Qualified Patient" means a qualified patient as defined at CAL. Health & Safety Code 11362.7(f).

2.10 " Reservation" or "Reservation Lands" shall mean the Round Valley Indian Reservation and the entirety of lands therein, as defined by U.S.C. 1151.

2.11 "State Pre-Identification Card" or " Identification Card" shall have the same definition as CAL. Health & Safety Code 11362.7-83.

2.12 "Tribe" shall mean the Round Valley Indian Tribes, inclusive of its developments as of the date of this amended Ordinance.

2.13 " State" shall mean the State of California, inclusive of Mendocino and Trinity Counties.

2.14 " Tribal Court" means the judiciary of the Round Valley Indian Tribes, which is in final development as of the date of this amended Ordinance.

2.15 "Tribal Police" or "Tribal Police Department" means the Tribal Police Department of the Round Valley Indian Tribes or the authorized representatives thereof.

2.16 "Tribal Notification" shall mean Tribal Police Notification.

2.17 "Legal Home Site" shall mean persons who holds a legal lease or assignment for a home. this shall not apply to persons who are interest holders, squatting with no legal lease, assignment and other related legal documentation.

2.18 "Indoor Grow / Greenhouse" shall mean a twenty five hundred (2500) square foot or 30'X80' structure used to cultivate small marijuana plants.


Section 3 – FINDINGS – The Council Finds that:


3.1   Whereas, an Ordinance was adopted by the Council and certified by the U.S. Department of Interior in 1970 that made lawful within the boundaries of the Reservation under the jurisdiction of the tribe and the "Introduction, Sale, or Possession of Intoxicants", provided, that such introduction, sale, or possession is in conformity with the laws of the State.

3.2   Whereas, the "Introduction, Sale, or Possession of Intoxicants" continues to be a federal offense under 18 U.S.C. 1161.

3.3   Whereas, the State has enacted the Compassionate Use Act of 1996, CAL. Health & Safety Code 11362.5

**3.4**  Whereas, Mendocino County has enacted its Medical Marijuana Cultivation Regulation, Mendocino Cty .Code 9.31.010, et seq.

**3.5**  Whereas, the general membership of the Round Valley Indian Tribes retain rights under the Indian Civil Rights Act of 1968, 25 U.S.C. 1301, et seq.

**3.6**  Whereas, the general membership of the Round Valley Indian Tribes, through the results of votes cast, chose not to enact an Ordinance to "ban" all marijuana cultivation.

**3.7**  Whereas, Indian persons within the Round Valley Indian Country are protected by the American Religious Freedom Act of 1978, 42 U.S.C. 1996, including the right to maintain traditional gathering sites and to engage in gathering activities.

**3.8**  Whereas, there resides within the Round Valley Indian Country non-tribal members and who cultivate and possess marijuana under the guidelines of the State of California and County of Mendocino.

**3.9**  Whereas, the Council seeks to ensure that seriously ill people have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana.

**3.10**  Whereas, the Council seeks to ensure these people and their caregivers that obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction.

**3.11**  Whereas, the Council seeks to facilitate the prompt identification of qualified patients and primary caregivers; avoid unnecessary arrest and prosecution or these individuals; provide needed guidance to law enforcement officers; promote uniform and consistent application of State Law; and to enhance the access of patients and caregivers to medical marijuana through collective, cooperative cultivation projects.

**3.12**  Whereas, whether grown for medical purposes or diverted to the black market, marijuana may be sold for thousands of dollars per pound, and thus must be regulated.

**3.13**  Whereas, there have been several marijuana related incidents of burglary, robbery , and armed robbery, some including acts of violence resulting in injury or death.

**3.14**  Whereas, marijuana that is grown indoors may require excessive use of electricity that may overload standard electrical systems creating an unreasonable risk of fire.  If indoor grow lighting systems are powered by diesel generators, improper maintenance of the generators and fuel lines and improper storage and disposal of diesel fuel and waste oil may create an unreasonable risk of fire and pollution; and further, such activities pose a risk to the natural environment of Round Valley Indian Country.

**3.15**  Whereas, the right of qualified patients and their primary caregivers under State Law to cultivate marijuana plants for medical purposes does not confer upon them the right to cause harm to the health, safety, or welfare of those persons within Round Valley Indian Country.

**3.16**   Whereas, by permitting no more than twenty five (25) marijuana plants for any one (1) person in possession of a lawfully issued State Pre-Identification Card, the Council anticipates a significant reduction in the complaints of crime and pollution described herein.

**3.17**   Whereas, the Council finds that the **outdoor** cultivation of more than twenty five (25) marijuana plants per one (1) person in possession of a lawfully issued State Pre-Identification Card within Round Valley Indian Country for medical purposes will likely result in an unreasonable risk of harm to the health, safety, and welfare of these persons, increased crime, and fire and/or pollution, notwithstanding the limitations on cultivation that are imposed within this Ordinance.

**3.18**   Whereas, Mendocino County's Medical Marijuana Cultivation Regulation, Mendocino Cty. Code 9.31.010, et seq., is civil regulatory and land use ordinance, because Pub. L. 280 does not grant the State or Mendocino County any general civil regulatory or land use power over Round Valley Indian Country, the Council finds it necessary for the Tribe to enact its own Compassionate Use Ordinance that will civilly regulate medical marijuana cultivation.

**3.19**   Whereas, in particular, Mendocino County's land use restrictions for indoor or outdoor cultivation of more than twenty-five (25) marijuana plants per legal parcel of land, Mendocino Cty. Code 9.31.050, is impractical in Round Valley Indian Country given the assignment land parcels; the range in Indian Land parcel acreage, ranging from partial acre to in excess of seventy acres; and the fact that multiple Tribal families might occupy a particular Indian Land parcel.

**3.20**   Whereas, a May 7, 2010 letter from the Bureau of Indian Affairs (BIA) Pacific Regional Office to the Tribal Council President, confirming that "California medical marijuana laws do not apply on Federal lands within the State", such as Round Valley Indian Country, but declaring that "criminal laws of the State (and those related to drug distribution) are applicable" therein, has only served to confuse the state of medical marijuana law in Round Valley Indian Country.

**3.21**   Whereas, the Council concurs with the United States Congress' findings to the Tribal Law and Order Act of 2010.

> The complicated jurisdictional scheme that exists in Indian Country . . . has a significant negative impact on the ability to provide public safety to Indian communities, . . . has been increasingly exploited by criminals; and . . . requires a high degree of commitment and cooperation among tribal, Federal, and State law enforcement officials . . .

Pub. L. No. 111-211, & 202,124 Stat. 2262 (2010).

**3.22**   Whereas, the Council concurs with the U.S. Department of Justice and the Bureau of Indian Affairs' conclusion that "broad-based partnerships involving key federal, tribal, state and local partners can build stronger, more sustainable programs" and that such "collaborations can address challenges related to jurisdiction over tribal members".  Department of Justice and the Department of the Interior, Tribal Law and Order Act: Long Term Plan to Build and Enhance Tribal Justice Systems 32 (2011).

**3.23**   Whereas, the Council finds that Constitution, Communication, Coordination and Collaboration between the Tribe, Tribal Council, and Tribal Police Department and the State, Mendocino County and County Sheriff's Office, as well as the BIA and any federal law enforcement agencies, are

required to ensure the health, safety and welfare of all persons within the Round Valley Indian Country and respect for the inherent sovereignty of the Round Valley Indian Tribes, particularly in concern for the cultivation, possession, and use of marijuana for medical purposes.

**3.24** Whereas, the Council agrees with the State Governor Edmund G. Brown Jr.'s directive that "every state agency and department . . . shall encourage communication and consultation with California Indian Tribes . . . to discuss state policies that may affect tribal communities." Cal. Executive Order B-10-11 (Sept. 19, 2011).

**3.25** Whereas, in the guiding case of State V. Cummings, 679 N.W.2d.484, 487 (S.D. 2004), it was held that "the state cannot extend its jurisdiction into the boundaries of the Tribe's Reservation without consent of the Tribe or a tribal-state compact."

**3.26** THEREFORE, to ensure the health, safety, and welfare of all persons within Round Valley Indian Country and the protection of the natural environment therein, the Round Valley Tribal Council is obligated to clearly define the Tribe's civil regulations as they relate to cultivation, possession, and use of marijuana for medical purposes, through this Compassionate Use Ordinance.

## Section 4 – REGULATIONS

**4.1** The Round Valley Tribal Council declares that the purpose of the Compassionate Use Ordinance of 2006 are as follows:

**4.1.1** To ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the cancer, or any other illness for which marijuana provides relief.

**4.1.2** To ensure patients and their caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction.

**4.1.3** To ensure the health and safety of all people living within the exterior boundaries of the Reservation.

**4.2** Nothing in this Section shall be construed to supersede legislation prohibiting persons from engaging in conduct that endangers others, not to condone the diversion of marijuana for nonmedical purposes. No person shall illegally introduce, cultivate or process marijuana within the interior boundaries of the Reservation.

**4.3** It shall be legal for a patient in possession of a State Pre-Identification Card or to a patient's primary caregiver in possession of a State Pre-Identification Card to possess or cultivate marijuana for personal medical purposes of the patient in possession of a State Pre-Identification Card under Tribal guidelines.

**4.4** Notwithstanding any other provision of law, no physician on the Reservation shall be punished, or denied any right or privilege, for having recommended marijuana to a patient for medical purposes.

**4.5** The introduction, cultivation, and possession of marijuana shall be lawful within the boundaries of the Round Valley Reservation under the jurisdiction of the Round Valley Tribal Council;

provided that such introduction, cultivation, or possession is in conformity with the laws of the State of California.

4.6   Pursuant to the State's Compassionate Use Act of 1996, Cal. Health & Safety Code 11362.5(d), neither Cal. Health & Safety Code 11357, relating to the possession of marijuana, nor Cal. Health & Safety Code 11358, relating to the cultivation of marijuana, shall apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval or a physician and in compliance with this Ordinance.

4.6.1   Although no person may be found in violation of this Ordinance for failing to do so, it is recommended that physician recommendations and/or other supporting documentation be conspicuously posted at growing and cultivation sites, and that such documentation or a copy of the documentation be carried with the patient and caregiver at all times. Failure to post and carry such documentation may result in unnecessary legal fees and costs and/or criminal prosecution.

4.6.2   The Council recognizes that under Cal. Health & Safety Code 11362.5, an individual may qualify as a patient by an oral recommendation. However, a prompt and noninvasive determination of whether cultivation and/or possession is legal or illegal is best accomplished with a written recommendation. Therefore, the Council recommends that patients and caregivers obtain written recommendations. Failure to carry such documentation may result in unnecessary legal fees and costs and/or criminal prosecution.

4.6.3   People have the right to choose their physicians and communications with physicians are privileged. Cal. Health & Safety Code 11362.5 provides that physicians can recommend marijuana use for "any illness for whish marijuana provides relief." The Council will honor any valid physician's recommendation. For the purpose of this statute, any inquiry into physician-patient communications is prohibited.

4.7   It is declared to be unlawful for any person owning, leasing, occupying, or having charge or possession of any parcel of land within Round Valley Indian Country to cause or allow such parcel of land to be used for the outdoor or indoor cultivation of marijuana plants for medical purposes in excess of limitations imposed within this section.

4.7.1   The cultivation of more than twenty five (25) **outdoor** marijuana plants per one (1) person in possession of a lawfully issued State Pre-Identification Card within Round Valley Indian Country, regardless of whether the person(s) growing the marijuana is/are a "qualified patient," "primary caregiver," or "collective," is hereby prohibited. Any qualified patient, person with an identification Card, or primary caregiver may not cultivate **outdoor** marijuana in excess of the amount reasonably related to the current medical needs of the patients or persons with identification cards for whom the marijuana is being cultivated, either individually or collectively, but in no case more than twenty five (25) total **outdoor** plants per one (1) person in possession of lawfully issued State Pre-Identification Card.

4.7.2   The use of light assistance for the **outdoor** cultivation of marijuana shall be less than or equal to **twenty five hundred (2,500) square feet or 30'X80'** within a structure with a maximum of three **(3) structures** on a **legal home site** lease or assignment. Due to the small size of **indoor** plants, there

shall be no limit on number of plants to be grown within each structure. Property owners may allow a maximum of two garden caretakers, with proper access to toilet facilities, to maintain the grow site if the owner(s) is/are utilizing more than one green house. Property owners shall be responsible for the actions of their caretakers.

4.7.3  All lights used for cultivation of marijuana shall be **shielded** and downcast or otherwise positioned in a manner that will not shine light or allow light glare to exceed the boundaries of the parcel upon which they are placed.

4.7.4  The **indoor** or **outdoor** cultivation of marijuana shall not create erosion or result in contaminated runoff into any stream, creek, river or body of water.

4.7.5  All marijuana grown outdoors must be within a **secured fence** that fully encloses the immediate garden area.

4.7.6  All buildings where marijuana is cultivated or stored shall be properly secured to prevent unauthorized entry.

4.7.7  Indoor cultivation of marijuana shall be less than or equal to twenty five hundred (2500) square feet or 30'X80" within a structure with a maximum of three (3) structures on a **legal** home site lease or assignment. **Note: this does not apply to interest holders or squatters. Due to the small size on** indoor plants, there shall be no limit on number of plants to be grown within a structure.

4.8  It is declared to be unlawful for any person within Round Valley Indian Country to possess marijuana plants or processed marijuana for medical purposes in excess of the limitations imposed within this section 4.8

4.8.1  No one (1) person in possession of a lawfully issued State Pre-Identification Card may possess more than the equivalent of twenty five (25) total plants of **processed** marijuana at any one time unless the Tribal Council and/or Tribal Police Department is given notice of said possession and said possession is approved by the Tribal Council and/or the Tribal Police Department.

4.8.2  The Council recognizes that possession of certain amounts of cannabis product such as baked goods, tinctures, concentrated cannabis, infusions, salves and other cannabis derivatives may be consistent with medical use. Such possession will be treated on a case by case basis, with deference given to Section 8 of this Ordinance.

4.14  Nothing in this section shall be construed as a limitation on the Tribe's authority to abate any violation that may exist from the cultivation of marijuana plants or any part thereof from any location, indoor or outdoor, including from within a fully enclosed and secure building.

4.15  Any Tribal Laws, resolutions, or ordinances heretofore enacted which prohibits the introduction, cultivation, or possession of marijuana or that are inconsistent with this Ordinance are hereby repealed.

## Section 5 – ENFORCEMENT OF ORDINANCE

5.1  This civil regulatory Ordinance shall be enforced by the Tribal Police Department upon any and all persons within Round Valley Indian Country. Any Tribal Law enforcement officer may issue a citation for violation(s) of this ordinance.

**5.2**   Nothing herein shall prohibit the Tribal Police from enforcement of any applicable criminal statutes, rules, regulations or ordinances, including those related to confiscation, seizure, and forfeiture.

**5.3**   Nothing herein shall prohibit the Council or individual residents of the Reservation from instituting a civil action before the Tribal Court, when established, against a person alleged to be acting in violation of this Ordinance.  The prevailing party is entitled to recovery for court fees, costs, and reasonable attorney's fees from the non-prevailing parties.

**5.4**   Should a plaintiff party described in section 5.3 institute a private suit against an individual alleged to be violating this Ordinance, the plaintiff shall provide written notice of the initiation of said action to the Tribal Council within five (5) days of the filing of such an action.

**5.5**   Upon finding that a person has violated this Ordinance, the Tribal Council and/or the Tribal Court are authorized to issue appropriate orders to seize, forfeit, and destroy marijuana plants in violation of this Ordinance.

**5.6**   Any declaration in support of a request for injunctive relief under this Ordinance shall contain the following information.

**5.6.1**   The number of **outdoor** marijuana plants under cultivation or greenhouses.

**5.6.2**   The date of any citation(s) issued pursuant to this Ordinance;

**5.6.3**   The name of the officer or person that issued the citation, if any;

**5.6.4**   The name of the owner of the property where the marijuana is located;

**5.6.5**   The description of the physical location of the property where the marijuana is located;

**5.6.6**   Whether any photographs or video tapes were taken of the marijuana plants; and

**5.6.7**   Any other relevant information.

**5.7**   Any declaration in support of a request for an order of seizure, forfeiture, and/or destruction of marijuana plants shall contain the following information.

**5.7.1**   The appropriate number of **outdoor** marijuana plants / greenhouses to be seized, forfeited, destroyed or confiscated;

**5.7.2**   The date of any citation(s) issued pursuant to this Ordinance

**5.7.3**   The name of the Officer or person that issued the citation, if any;

**5.7.4**   The name of the owner of the property where the marijuana is located;

**5.7.5**   The description of the physical location of the property where the marijuana is located;

**5.7.6**   Whether any photographs or video tapes were taken of marijuana plants;

**5.7.7**   A statement as to whether any marijuana samples are necessary for prosecution of A criminal action; and

**5.7.8**   Any other relevant information.

**5.8**  All declarations and other pleadings filed in support of any requested order shall be served upon the Defendant(s) in accordance with the applicable rules of the Tribal Council and/or Tribal Court.

**5.9**  Marijuana plants shall be disposed and/or destroyed in the following manner;

**5.9.1**  Action instituted for alleged violation(s) of this Ordinance shall be rendered moot, including the imposition of appropriate civil penalties and/or injunctive relief, by voluntary destruction and/or removal of marijuana plants by defendant(s).

**5.9.2**  Upon order of the Tribal Council and/or the Tribal Court, the Tribal Police Department shall dispose of marijuana as appropriate.  Should any funds be received as a result of the disposal, said funds shall be distributed equally between the Tribal Police Department, the Tribal Council, and Yuki Trails program.

**5.9.3**  Governmental taking without due process and compensation is generally prohibited.  Therefore, if any Tribal or State officer(s) believe marijuana cultivation and/or possession is pursuant to Cal. Health & Safety Code 11362.5, but that the cultivation and/or possession exceeds this Ordinance, the officer(s) should only seize that amount in excess of the guidelines.  Marijuana should not be destroyed or disposed of until an order from the Council and/or Tribal Court is issued.

## Section 6 – JURISDICTION/POLICE PROCEDURES

**6.1**  This Ordinance shall fall within the inherent jurisdiction of the Round Valley Indian Tribes, which includes civil regulatory jurisdiction over all persons, member or non-member, while in Round Valley Indian Country, and over all Indians while upon any Reservation or Indian Country lands.  Nothing about this Ordinance shall be construed to cause the Tribe to accede to any State civil regulatory or land use jurisdiction in Round Valley Indian Country, particularly the application of State marijuana laws and regulations.  The Council hereby disclaims any application or enforcement of State civil regulatory or land use laws in Round Valley Indian Country, particularly any State marijuana laws and regulations unless adopted by reference herein.

**6.2**  When a tribal member is situated on Indian Country trust land, a State officer's civil regulatory authority extends only so long as that officer does not circumvent or contravene governing, tribal procedure.  Because of the likelihood that State Officers will seek to enforce State marijuana laws upon persons in Round Valley Indian Country, State Police Officers shall give reasonable advance tribal notification prior to entrance into Round Valley Indian Country if it is reasonably likely that said entrance will result in the enforcement of State marijuana laws.

**6.3**  In order to effect any search, arrest or extradition warrant or investigation relative to State marijuana laws, against any tribal member in Round Valley Indian Country, State Police Officers shall not only provide that reasonable advanced tribal notification required by section 6.2, but shall also consult, communicate, and coordinate any such search, arrest, extradition, or investigation activities, with Tribal Police.  Should the Tribal Police elect to cooperate in the execution of any search, arrest or extradition warrant or any investigation, State Police officers shall not frustrate such cooperation by any dispatched Tribal Police officer.

**6.4**  For purposes of any search, arrest or extradition warrant or investigation relative to State marijuana laws, against any tribal member in Round Valley Indian Country, Tribal Police shall be allowed

access to, and allowed to share with State Police officers, any land records from the tribal Realty and/or enrollment department for the purpose of determining whether any person alleged to have violated State marijuana laws is a tribal member, or any other relevant information.  It is the Tribe's expectation that State Police officers will reciprocate in sharing with Tribal Police any or all such documentation or information.

**6.5**  The Tribal codified procedures concerning any search, arrest or extradition warrant or investigation activities relative to any enforcement of State marijuana laws in Round Valley Indian Country, set forth in section 6.2, 6.3 and 6.4, are mandatory.

## Section 7 - PENALTIES

**7.1**  Any person to have been found in violation of this Ordinance shall be issued a civil penalty not to exceed a fine of $10,000 and/or the reasonable costs of investigation, seizure, forfeiture, destruction, litigation, and enforcement of this Ordinance.

**7.2**  Nothing herein shall prevent the Tribe or Tribal Council from seeking criminal prosecution of any person who violates this Ordinance for violation of any applicable criminal law(s) by appropriate other authorities.

## Section 8 - MEDICINAL USE

Any defense based upon medicinal use, where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana, shall be considered as a valid defense to the alleged violation of this Ordinance.

## Section 9 – SEVERABILITY

If any provision of this Ordinance or the application thereof to any person or circumstance is held invalid, that invalidity shall not affect other provisions or applications of the measure that can be given effect without the invalid provision or application, and to this end the provision of this Ordinance are severable.

## Section 10 – EFFECTIVE DATE

This Ordinance shall take effect immediately upon passage, and shall have retroactive application to June 19, 2012.

PROPOSED AMENDMENTS TO THE COMPASSIONATE USE ORDINANCE OF THE ROUND VALLEY INDIAN TRIBES – 2016

3.3 ADD= AND ASSEMBLY BILL 2545

3.16 AMEND TO READ= WHEREAS, BY PERMITTING NO MORE THAN FIFTY(50) MARIJUANA PLANTS FOR ANY ONE(1) PERSON IN POSSESSION OF A LAWFULLY ISSUED STATE PRE-IDENTIFICATION CARD, THE COUNCIL ANTICIPATES A SIGNIFICANT REDUCTION IN THE COMPLAINTS OF CRIME AND POLLUTION DESCRIBED HEREIN.

3.17= STRIKE (INDOOR) AND CHANGE TWENTY-FIVE(25) TO FIFTY(50)

4.7.1= CHANGE TWENTY-FIVE(25) TO FIFTY(50), STRIKE ( EITHER INDOORS), TWENTY-FIVE(25) TO FIFTY(50) AND ADD PERSON IN POSSESSION OF A LAWFULLY ISSUED STATE PRE-IDENTIFICATION CARD, (ON ANY INDIVIDUAL ONE(1) ACRE TRIBAL HOMESITE OR ASSIGNMENT, NOT TO EXCEED NINETY-NINE(99) PLANTS)

4.7.2= AMEND TO READ THE USE OF LIGHT ASSISTANCE FOR THE OUTDOOR CULTIVATION OF MARIJUANA SHALL (BE LESS THAN OR EQUAL TO TWENTY-FIVE(25) HUNDRED SQUARE FEET WITHIN A STRUCTURE WITH A MAXIMUM OF TWO STRUCTURES AND NO LIMIT ON NUMBER OF PLANTS TO BE GROWN WITHIN EACH STRUCTURE.

ADD 4.7.7= INDOOR CULTIVATION OF MARIJUANA SHALL BE LESS THAN OR EQUAL TO TWENTY-FIVE(25) HUNDRED SQUARE FEET OF CULTIVATION AREA WITHIN A STRUCTURE AND NO LIMIT ON NUMBER OF PLANTS TO BE GROWN WITHIN A STRUCTURE.

# EXHIBIT B

**United States Department of the Interior**
**Bureau of Indian Affairs**
**Title Status Report**

Report Certification Time and Date: 09/10/1987 08:00:00 PM

Requestor: JVANDERH Date/Time: 02/28/2025 08:39:20

| Land Area | Land Area Name | Tract Number | LTRO | Region | Agency | Resources |
|-----------|----------------|--------------|------|--------|--------|-----------|
| 540 | ROUND VALLEY RESERVATION | 406 A | SACRAMENTO, CA | PACIFIC REGIONAL OFFICE | CENTRAL CALIFORNIA AGENCY | Both |

Original Allottee: DIXIE (HOLBOSH) DUNCAN

See Appendix A for Land Legal Descriptions

**Title Status**

Tract 540 406 A is held by the United States of America in trust for the land owner(s) with trust interests and/or by the land owner(s) with restricted interests and/or fee simple interests, as listed in Appendix "B" attached to and incorporated in this Title Status Report.

The title to Tract 540 406 A is current, complete, correct, and without defect. Ownership is in unity and interests are owned in the following title status: trust.

The tract ownership is encumbered by the title documents which have been approved by a properly delegated Federal official and are required to be recorded by law, regulation, or Bureau policy as listed on Appendix "C" attached to and incorporated in this Title Status Report.

See Appendix D for all other documents that are required to be recorded by law, regulation or Bureau policy.

No Tract Notes or Coded Remarks for this tract.

This report does not cover encroachments nor any other rights that might be disclosed by a physical inspection of the premises, nor questions of location or boundary that an accurate survey may disclose. This Report also does not cover encumbrances, including but not limited to irrigation charges, unpaid claims, not filed or recorded in this Land Titles and Records Office. This report does not state the current ownership of the interests owned in fee simple but states the ownership at the time the interest ceased to be held in trust or restricted ownership status.

This Title Status Report is a true and correct report of the status of title to the real estate described herein according to the official land records recorded and maintained in this office.

**Appendix "A"**

| Land Area | Land Area Name | Tract Number | LTRO | Region | Agency | Resources |
|---|---|---|---|---|---|---|
| 540 | ROUND VALLEY RESERVATION | 406 A | SACRAMENTO, CA | PACIFIC REGIONAL OFFICE | CENTRAL CALIFORNIA AGENCY | Both |

**Land Legal Descriptions**

| Section | Township | Range | State | County | Meridian | Legal Description | Acres |
|---|---|---|---|---|---|---|---|
| 33 | 023.00N | 012.00W | CALIFORNIA | MENDOCINO | Mount Diablo | S SW SE SW NW | 1.250 |

METES AND BOUNDS: S SW OF LOT 26

TOTAL TRACT ACRES:                 1.250

**Appendix "B"**

| Land Area | Land Area Name | Tract Number | LTRO | Region | Agency | Resources |
|---|---|---|---|---|---|---|
| 540 | ROUND VALLEY RESERVATION | 406 A | SACRAMENTO, CA | PACIFIC REGIONAL OFFICE | CENTRAL CALIFORNIA AGENCY | Both |

Effective Ownership as of 10/23/2004

| OWNER | | | | DOCUMENT | | NAME IN WHICH | FRACTION TRACT | AGGREGATE SHARE | AGGREGATE |
|---|---|---|---|---|---|---|---|---|---|
| Tribe | Indian / NonIndian | Title | Interest* | Class | Type | SURNAME/FIRST NAME | AS ACQUIRED | CONVERTED TO LCD | DECIMAL |
| ROUND VALLEY INDIAN TRIBES, ROUND VALLEY RESERVATION, CALIFORNIA | Indian | Trust | All | Deed-TS | SPEC AUT | JAMES APRIL DAWN | 1 1 | 1 1 | 1.0000000000 |

\* "All" means the equitable beneficial interest and the legal title interest merged together.

| IN TRUST: | 1 |
|---|---|
| | 1  1.0000000000 |

| IN RESTRICTED FEE: | 0 |
|---|---|
| | 1  .0000000000 |

| IN FEE: | 0 |
|---|---|
| | 1  .0000000000 |

| IN TOTAL: | 1 |
|---|---|
| | 1  1.0000000000 |

**Appendix "C"**

| Land Area | Land Area Name | Tract Number | LTRO | Region | Agency | Resources |
|---|---|---|---|---|---|---|
| 540 | ROUND VALLEY RESERVATION | 406 A | SACRAMENTO, CA | PACIFIC REGIONAL OFFICE | CENTRAL CALIFORNIA AGENCY | Both |

Ownership of Tract 540 406 A is encumbered by the following:

NO REALTY DOCUMENTS FOUND

**Type of Encumbrance**

| Encumbrance | Encumbrance Holder | Expiration | Document | Description and Explanation |
|---|---|---|---|---|
| SURVEY/SUPPLEMENTAL PLAT | | | 243Y09 | SUPPLEMENTAL PLAT: LANCE J. BISHOP, DATED: 03/03/2009. |

**Appendix "D"**

| Land Area | Land Area Name | Tract Number | LTRO | Region | Agency | Resources |
|---|---|---|---|---|---|---|
| 540 | ROUND VALLEY RESERVATION | 406 A | SACRAMENTO, CA | PACIFIC REGIONAL OFFICE | CENTRAL CALIFORNIA AGENCY | Both |

No Contracts to list for Appendix D

No Encumbrances to list for Appendix D

# EXHIBIT C

**United States Department of the Interior**
**Bureau of Indian Affairs**
**Title Status Report**

Report Certification Time and Date: 01/21/2025 03:41:43 PM

Requestor: JVANDERH Date/Time: 02/25/2025 18:07:55

| Land Area | Land Area Name | Tract Number | LTRO | Region | Agency | Resources |
|---|---|---|---|---|---|---|
| 540 | ROUND VALLEY RESERVATION | 362 | SACRAMENTO, CA | PACIFIC REGIONAL OFFICE | CENTRAL CALIFORNIA AGENCY | Both |

Original Allottee: MAGGIE MACHACH

See Appendix A for Land Legal Descriptions

**Title Status**

Tract 540 362 is held by the United States of America in trust for the land owner(s) with trust interests and/or by the land owner(s) with restricted interests and/or fee simple interests, as listed in Appendix "B" attached to and incorporated in this Title Status Report.

The title to Tract 540 362 is current, complete, correct, and without defect. Ownership is in unity and interests are owned in the following title status: trust.

The tract ownership is encumbered by the title documents which have been approved by a properly delegated Federal official and are required to be recorded by law, regulation, or Bureau policy as listed on Appendix "C" attached to and incorporated in this Title Status Report.

See Appendix D for all other documents that are required to be recorded by law, regulation or Bureau policy.

No Tract Notes or Coded Remarks for this tract.

This report does not cover encroachments nor any other rights that might be disclosed by a physical inspection of the premises, nor questions of location or boundary that an accurate survey may disclose. This Report also does not cover encumbrances, including but not limited to irrigation charges, unpaid claims, not filed or recorded in this Land Titles and Records Office. This report does not state the current ownership of the interests owned in fee simple but states the ownership at the time the interest ceased to be held in trust or restricted ownership status.

This Title Status Report is a true and correct report of the status of title to the real estate described herein according to the official land records recorded and maintained in this office.

**Appendix "A"**

| Land Area | Land Area Name | Tract Number | LTRO | Region | Agency | Resources |
|---|---|---|---|---|---|---|
| 540 | ROUND VALLEY RESERVATION | 362 | SACRAMENTO, CA | PACIFIC REGIONAL OFFICE | CENTRAL CALIFORNIA AGENCY | Both |

**Land Legal Descriptions**

| Section | Township | Range | State | County | Meridian | Legal Description | Acres |
|---|---|---|---|---|---|---|---|
| 32 | 023.00N | 012.00W | CALIFORNIA | MENDOCINO | Mount Diablo | | 8.000 |

METES AND BOUNDS: LOT 34, EXCEPT THE  NORTH 1/2 OF THE EAST 1/5 OF LOT 34, AND EXCEPT THE NORTH 1/2 OF THE WEST 1/5 OF LOT 34

TOTAL TRACT ACRES:    8.000

**Appendix "B"**

| Land Area | Land Area Name | Tract Number | LTRO | Region | Agency | Resources |
|---|---|---|---|---|---|---|
| 540 | ROUND VALLEY RESERVATION | 362 | SACRAMENTO, CA | PACIFIC REGIONAL OFFICE | CENTRAL CALIFORNIA AGENCY | Both |

Effective Ownership as of 01/08/2025

| Tribe | Indian / NonIndian | Title | Interest* | Class | Type | SURNAME/FIRST NAME | AS ACQUIRED | CONVERTED TO LCD | DECIMAL |
|---|---|---|---|---|---|---|---|---|---|
| ROUND VALLEY INDIAN TRIBES, ROUND VALLEY RESERVATION, CALIFORNIA | Indian | Trust | All | Deed-TS | ACT 1934 | SWEARINGER EUNICE | 1 7 | | |
| | | Trust | All | Prob Ord | INTE | SWEARINGER EUNICE | 1 56 | | |
| | | Trust | All | Prob Ord | TESTATE | SWEARINGER EUNICE MARY | 1 8 | 16 56 | .2857142858 |
| ROUND VALLEY INDIAN TRIBES, ROUND VALLEY RESERVATION, CALIFORNIA | Indian | Trust | All | Prob Ord | INTE | PETE LEWIS WAYNE | 1 56 | | |
| | | Trust | All | Prob Ord | TESTATE | PETE LEWIS | 1 8 | 8 56 | .1428571428 |
| ROUND VALLEY INDIAN TRIBES, ROUND VALLEY RESERVATION, CALIFORNIA | Indian | Trust | All | Deed-TS | ACT 1983 | PETE GARY EDWARD | 1 7 | | |
| | | Trust | All | Prob Ord | INTE | PETE GARY EDWARD | 1 56 | | |
| | | Trust | All | Prob Ord | TESTATE | PETE GARY | 1 8 | 16 56 | .2857142858 |

Column groups:
- OWNER: Tribe, Indian / NonIndian
- DOCUMENT: Title, Interest*, Class, Type
- NAME IN WHICH: SURNAME/FIRST NAME
- FRACTION TRACT: AS ACQUIRED
- AGGREGATE SHARE: CONVERTED TO LCD
- AGGREGATE: DECIMAL

**Appendix "B"**

| Land Area | Land Area Name | Tract Number | LTRO | Region | Agency | Resources |
|---|---|---|---|---|---|---|
| 540 | ROUND VALLEY RESERVATION | 362 | SACRAMENTO, CA | PACIFIC REGIONAL OFFICE | CENTRAL CALIFORNIA AGENCY | Both |

Effective Ownership as of 01/08/2025

| \-------------- OWNER --------------- | | | | \---- DOCUMENT ---- | | NAME IN WHICH | FRACTION TRACT | AGGREGATE SHARE | AGGREGATE |
|---|---|---|---|---|---|---|---|---|---|
| Tribe | Indian / NonIndian | Title | Interest* | Class | Type | SURNAME/FIRST NAME | AS ACQUIRED | CONVERTED TO LCD | DECIMAL |
| ROUND VALLEY INDIAN TRIBES, ROUND VALLEY RESERVATION, CALIFORNIA | Indian | Trust | All | Prob Ord | INTE | LAIWA VELMA ELIZABETH DECEASED 09/15/2019 | 1 56 | | |
| | | Trust | All | Prob Ord | TESTATE | LAIWA VELMA DECEASED 09/15/2019 | 1 8 | 8 56 | .1428571428 |
| ROUND VALLEY INDIAN TRIBES, ROUND VALLEY RESERVATION, CALIFORNIA | Indian | Trust | Title | Prob Ord | INTE | SWEARINGER DEBORA L | 1 56 | 1 56 | .0178571428 |
| ROUND VALLEY INDIAN TRIBES, ROUND VALLEY RESERVATION, CALIFORNIA | Indian | Trust | Title | Prob Ord | INTE | BURROWS TINA MAE | 1 56 | 1 56 | .0178571429 |
| ROUND VALLEY INDIAN TRIBES, ROUND VALLEY RESERVATION, CALIFORNIA | Indian | Trust | Title | Prob Ord | INTE | HOAGLIN FRANCES YOLANDA | 1 56 | 1 56 | .0178571429 |

**Appendix "B"**

| Land Area | Land Area Name | Tract Number | LTRO | Region | Agency | Resources |
|---|---|---|---|---|---|---|
| 540 | ROUND VALLEY RESERVATION | 362 | SACRAMENTO, CA | PACIFIC REGIONAL OFFICE | CENTRAL CALIFORNIA AGENCY | Both |

Effective Ownership as of 01/08/2025

| | | -------------- OWNER -------------- | | ---- DOCUMENT ---- | | NAME IN WHICH | FRACTION TRACT | AGGREGATE SHARE | AGGREGATE |
|---|---|---|---|---|---|---|---|---|---|
| Tribe | Indian / NonIndian | Title | Interest* | Class | Type | SURNAME/FIRST NAME | AS ACQUIRED | CONVERTED TO LCD | DECIMAL |
| ROUND VALLEY INDIAN TRIBES, ROUND VALLEY RESERVATION, CALIFORNIA | Indian | Trust | Title | Prob Ord | INTE | JOAQUIN SYLVESTER CHARLES | 1 56 | 1 56 | .0178571428 |
| ROUND VALLEY INDIAN TRIBES, ROUND VALLEY RESERVATION, CALIFORNIA | Indian | Trust | Title | Prob Ord | INTE | FREASE ANNA M | 1 56 | 1 56 | .0178571429 |
| ROUND VALLEY INDIAN TRIBES, ROUND VALLEY RESERVATION, CALIFORNIA | Indian | Trust | Title | Prob Ord | INTE | JOAQUIN DAVID LEE | 1 56 | 1 56 | .0178571428 |
| ROUND VALLEY INDIAN TRIBES, ROUND VALLEY RESERVATION, CALIFORNIA | Indian | Trust | Title | Prob Ord | INTE | JOAQUIN WENDY | 1 56 | 1 56 | .0178571429 |

**Appendix "B"**

| Land Area | Land Area Name | Tract Number | LTRO | Region | Agency | Resources |
|---|---|---|---|---|---|---|
| 540 | ROUND VALLEY RESERVATION | 362 | SACRAMENTO, CA | PACIFIC REGIONAL OFFICE | CENTRAL CALIFORNIA AGENCY | Both |

Effective Ownership as of 01/08/2025

| -------------- OWNER -------------- | | | | ---- DOCUMENT ---- | | NAME IN WHICH | FRACTION TRACT | AGGREGATE SHARE | AGGREGATE |
|---|---|---|---|---|---|---|---|---|---|
| Tribe | Indian / NonIndian | Title | Interest* | Class | Type | SURNAME/FIRST NAME | AS ACQUIRED | CONVERTED TO LCD | DECIMAL |
| ROUND VALLEY INDIAN TRIBES, ROUND VALLEY RESERVATION, CALIFORNIA | Indian | Trust | Title | Prob Ord | INTE | JOAQUIN ANGIE L | 1 56 | 1 56 | .0178571428 |

| | | |
|---|---|---|
| IN TRUST: | 56 | |
| | 56 | 1.0000000000 |

| | | |
|---|---|---|
| IN RESTRICTED FEE: | 0 | |
| | 56 | .0000000000 |

| | | |
|---|---|---|
| IN FEE: | 0 | |
| | 56 | .0000000000 |

| | | |
|---|---|---|
| IN TOTAL: | 56 | |
| | 56 | 1.0000000000 |

* "All" means the equitable beneficial interest and the legal title interest merged together.

* SPECIAL INTEREST HOLDERS *

Effective Ownership as of 01/08/2025

| -------------- OWNER -------------- | | | | ---- DOCUMENT ---- | | NAME IN WHICH | FRACTION TRACT | AGGREGATE SHARE | AGGREGATE |
|---|---|---|---|---|---|---|---|---|---|
| Tribe | Indian / NonIndian | Title | Interest* | Class | Type | SURNAME/FIRST NAME | AS ACQUIRED | CONVERTED TO LCD | DECIMAL |
| HOPLAND BAND OF POMO INDIAN CALIFORNIA | Indian | Trust | Beneficial | Probate Order | INTE | JOAQUIN, SR SYLVESTER M | 1 7 | 8 56 | .1428571428 |

**Appendix "C"**

| Land Area | Land Area Name | Tract Number | LTRO | Region | Agency | Resources |
|---|---|---|---|---|---|---|
| 540 | ROUND VALLEY RESERVATION | 362 | SACRAMENTO, CA | PACIFIC REGIONAL OFFICE | CENTRAL CALIFORNIA AGENCY | Both |

Ownership of Tract 540 362 is encumbered by the following:

      NO REALTY DOCUMENTS FOUND

**Type of Encumbrance**

| Encumbrance | Encumbrance Holder | Expiration | Document | Description and Explanation |
|---|---|---|---|---|
| OTHER SPECIAL AUTHORITY | PETE LINDA JOLENE | | 4200473820 | ILCA: THE SECRETARY SHALL NOT APPROVE AN APPLICATION TO TERMINATE TRUST STATUS FOR A PERIOD OF 5 YEARS AFTER THE APPROVAL OF THIS CONVEYANCE (25 U.S.C, 2216). ON THE INTEREST WHICH IS BEING CONVEYED HEREIN. |

**Appendix "D"**

| Land Area | Land Area Name | Tract Number | LTRO | Region | Agency | Resources |
|---|---|---|---|---|---|---|
| 540 | ROUND VALLEY RESERVATION | 362 | SACRAMENTO, CA | PACIFIC REGIONAL OFFICE | CENTRAL CALIFORNIA AGENCY | Both |

No Contracts to list for Appendix D

No Encumbrances to list for Appendix D

# EXHIBIT D

**United States Department of the Interior
Bureau of Indian Affairs
Title Status Report**

Report Certification Time and Date: 11/27/2017 01:51:31 PM

Requestor: JVANDERH Date/Time: 02/27/2025 09:58:34

| Land Area | Land Area Name | Tract Number | LTRO | Region | Agency | Resources |
|---|---|---|---|---|---|---|
| 540 | ROUND VALLEY RESERVATION | 601 | SACRAMENTO, CA | PACIFIC REGIONAL OFFICE | CENTRAL CALIFORNIA AGENCY | Both |

Original Allottee: JULIA WOOD

See Appendix A for Land Legal Descriptions

**Title Status**

Tract 540 601 is held by the United States of America in trust for the land owner(s) with trust interests and/or by the land owner(s) with restricted interests and/or fee simple interests, as listed in Appendix "B" attached to and incorporated in this Title Status Report.

The title to Tract 540 601 is current, complete, correct, and without defect. Ownership is in unity and interests are owned in the following title status: trust.

The tract ownership is encumbered by the title documents which have been approved by a properly delegated Federal official and are required to be recorded by law, regulation, or Bureau policy as listed on Appendix "C" attached to and incorporated in this Title Status Report.

See Appendix D for all other documents that are required to be recorded by law, regulation or Bureau policy.

No Tract Notes or Coded Remarks for this tract.

This report does not cover encroachments nor any other rights that might be disclosed by a physical inspection of the premises, nor questions of location or boundary that an accurate survey may disclose. This Report also does not cover encumbrances, including but not limited to irrigation charges, unpaid claims, not filed or recorded in this Land Titles and Records Office. This report does not state the current ownership of the interests owned in fee simple but states the ownership at the time the interest ceased to be held in trust or restricted ownership status.

This Title Status Report is a true and correct report of the status of title to the real estate described herein according to the official land records recorded and maintained in this office.

_____

**Appendix "A"**

| Land Area | Land Area Name | Tract Number | LTRO | Region | Agency | Resources |
|---|---|---|---|---|---|---|
| 540 | ROUND VALLEY RESERVATION | 601 | SACRAMENTO, CA | PACIFIC REGIONAL OFFICE | CENTRAL CALIFORNIA AGENCY | Both |

**Land Legal Descriptions**

| Section | Township | Range | State | County | Meridian | Legal Description | Acres |
|---|---|---|---|---|---|---|---|
| 32 | 023.00N | 012.00W | CALIFORNIA | MENDOCINO | Mount Diablo | N SE SW SE | 5.000 |

METES AND BOUNDS: THE NORTH 1/2 OF LOT 62

TOTAL TRACT ACRES: 5.000

**Appendix "B"**

| Land Area | Land Area Name | Tract Number | LTRO | Region | Agency | Resources |
|---|---|---|---|---|---|---|
| 540 | ROUND VALLEY RESERVATION | 601 | SACRAMENTO, CA | PACIFIC REGIONAL OFFICE | CENTRAL CALIFORNIA AGENCY | Both |

Effective Ownership as of 10/31/2017

| --------------- OWNER --------------- | | | | ---- DOCUMENT ---- | | NAME IN WHICH | FRACTION TRACT | AGGREGATE SHARE | AGGREGATE |
|---|---|---|---|---|---|---|---|---|---|
| Tribe | Indian / NonIndian | Title | Interest* | Class | Type | SURNAME/FIRST NAME | AS ACQUIRED | CONVERTED TO LCD | DECIMAL |
| ROUND VALLEY INDIAN TRIBES, ROUND VALLEY RESERVATION, CALIFORNIA | Indian | Trust | All | Deed-TS | ACT 1983 | AZBILL | 1 | 1 | |
| | | | | | | MCKENNA MARY-MAE | 1 | 1 | 1.0000000000 |

\* "All" means the equitable beneficial interest and the legal title interest merged together.

| IN TRUST: | 1 |
|---|---|
| | 1  1.0000000000 |

| IN RESTRICTED FEE: | 0 |
|---|---|
| | 1   .0000000000 |

| IN FEE: | 0 |
|---|---|
| | 1   .0000000000 |

| IN TOTAL: | 1 |
|---|---|
| | 1  1.0000000000 |

**Appendix "C"**

| Land Area | Land Area Name | Tract Number | LTRO | Region | Agency | Resources |
|---|---|---|---|---|---|---|
| 540 | ROUND VALLEY RESERVATION | 601 | SACRAMENTO, CA | PACIFIC REGIONAL OFFICE | CENTRAL CALIFORNIA AGENCY | Both |

Ownership of Tract 540 601 is encumbered by the following:

      NO REALTY DOCUMENTS FOUND

      NO REALTY DEFECTS FOUND

      NO TITLE DEFECTS FOUND

      NO ENCUMBRANCES FOUND

**Appendix "D"**

| Land Area | Land Area Name | Tract Number | LTRO | Region | Agency | Resources |
|---|---|---|---|---|---|---|
| 540 | ROUND VALLEY RESERVATION | 601 | SACRAMENTO, CA | PACIFIC REGIONAL OFFICE | CENTRAL CALIFORNIA AGENCY | Both |

No Contracts to list for Appendix D

No Encumbrances to list for Appendix D

# EXHIBIT E

Case# 20240 2896

SW No.     **03234031**

# COUNTY OF MENDOCINO, STATE OF CALIFORNIA

# SEARCH WARRANT

**THE PEOPLE OF THE STATE OF CALIFORNIA,** to any Sheriff, Sheriff's deputy, policeman, or peace officer in the County of Mendocino: **PROOF** by affidavit having been made before me by Humboldt County Sheriff's Office Deputy Justin Pryor, that there is probable cause to believe the property described herein may be found at the location(s) set forth herein and that it is lawfully seizable pursuant to Penal Code §1524, as indicated below by "x" (s) in that it:

☐ was stolen or embezzled;

☒ was used as the means of committing a felony;

☒ is possessed by a person with the intent to use it as a means of committing a public offense; OR is possessed by another to whom he may have delivered it for the purpose of concealing it or preventing its discovery;

☒ is evidence which tends to show a felony has been committed or a particular person has committed a felony;

☒ when the property or things to be seized are controlled substances or a device, contrivance, instrument, or paraphernalia used for unlawfully using or administering a controlled substance pursuant to the authority described in Section 11472 of the Health and Safety Code.

**YOU ARE THEREFORE COMMANDED TO SEARCH:**
See Exhibit "1A" attached hereto and incorporated herein by this reference;

**FOR THE FOLLOWING PROPERTY:**
See Exhibit "1B" attached hereto and incorporated herein by this reference;
and to SEIZE it if found and retain such property in your custody, subject to the order of the court pursuant to Penal Code §1528(a), 1536. Wherefore, I find probable cause for the issuance of this Search Warrant and do issue it.

**GOOD CAUSE HAVING BEEN SHOWN** in the affidavit, **NIGHT SEARCH** pursuant to Penal Code §1533 is approved:    ☐Yes  ☒No _____
(Magistrate's initials)

GIVEN under my hand and dated this _19th_ day of _July_ , 201_4_ at _2:48_ a.m. (p.m)

_____
(Signature of Magistrate)
Judge of the Mendocino County Superior Court

# EXHIBIT F

**STATE OF CALIFORNIA – COUNTY OF MENDOCINO**

**FILED**

Search Warrant Number: **2022-15531.1**

NOV 01 2022

CLERK OF MENDOCINO COUNTY
SUPERIOR COURT OF CALIFORNIA

# RETURN TO SEARCH WARRANT

Detective Timothy Del Fiorentino #2725, says that he/she conducted a search pursuant to the below described seizure order:

Issuing Magistrate: ___Judge Faulder___

Magistrate's Court:  Superior Court of California, County of Mendocino

Date of Issuance: ___07/8/2022___

Date of Service: ___07/15/2022___

And searched the following location(s), vehicle(s), and person(s):

**- 78140 Crawford Road, Covelo, California 95428**

And seized the following items:

**See attached Property Receipt**

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct, and that this is a true and detailed account of all the property taken by me pursuant to the search warrant, and that pursuant to Penal Code Sections 1528 and 1536 this property will be retained in my custody, subject to the order of this court and any other court in which the offense in respect to which the seized property is triable.

_(Signature of Affiant)_

MATTHEW C. KENDALL
Sheriff-Coroner



County of Mendocino
Office Of The Sheriff-Coroner

Undersheriff Darren Brewster

Captain Gregory L. Van Patten
*Field Services*
Captain Tim Pearce
*Corrections*

## PROPERTY RECEIPT

*Property is returned by appointment only. For further assistance on claiming your items contact the property room at (707) 463-4106.*

CASE NO.: 2022 - 15531
Page 1 of 1

**FIREARMS:**
( ) Firearms taken at a domestic violence incident
( ) Firearms taken for mental health evaluation
( ) Firearms surrendered pursuant to a restraining/protective order
( ) Firearms surrendered for destruction

☐ Consent to Search
☐ Open Field

**OTHER PROPERTY:**
( ) Property Taken As Evidence      ( ) Found Property      ( ) Property Held for safekeeping
☒ Items Seized Pursuant To A Search Warrant  JUDGE FAULDER
S/W  2022-15531.1

PROPERTY SEIZED FROM

NAME
78140 CRAWFORD RD, COVELO CA,      CDL/ID # APN# 032-460-33-00
ADDRESS/LOCATION

| ITEM # | DESCRIPTION (Firearms - Include Serial Number) | EXACT LOCATION FOUND |
|---|---|---|
| SW1#01 | 10 POUND & 5 RANDOM SAMPLES OF M/J | GROW AREA |
| SW1#02 | GLOCK 43X S/N: BMPY814 /9MM | TOY HAULER TRAVEL TRAILER |
| SW1#03 | 9 MM AMMUNITION IN BOXES/4 BURUN 4 BOXES | TOY HAULER TRAVEL TRAILER |
| SW1#04 | RUGER 10/22 S/N: 258557 05 | INTREPID TRAVEL TRAILER |
|  | NOTHING ELSE TAKEN |  |
|  |  |  |
|  |  |  |
|  |  |  |
| 113,361 | GROWING MARIJUANA PLANTS ERADICATED & FIELD DESTROYED. |  |
|  |  |  |

Property/Evidence not claimed will be considered abandoned and disposed of in accordance to all applicable laws. Refer to the backside of this property receipt for further information.

| RECEIVING OFFICER: | DELFIORENTINO | ID #: 2325 | DATE: 07/15/22 |
|---|---|---|---|
| WITNESSING INDIVIDUAL: | WYANT | ID #: 2487 | DATE: 7-15-22 |
| FIREARMS SURRENDERED BY: |  | ID #: | DATE: |
| RECEIVING INDIVIDUAL: |  | ID #: | DATE: |

*White Copy - Records*
Revised 08/20

*Yellow Copy - Investigator*

*Pink Copy - Receiving Individual*
RB17-03

# STATE OF CALIFORNIA - COUNTY OF MENDOCINO
## SEARCH WARRANT

**FILED**

NOV 01 2022

CLERK OF MENDOCINO COUNTY
SUPERIOR COURT OF CALIFORNIA

MCSO#2022-15531.1

**The People of the State of California to any Sheriff, Constable, Marshall, Or Police Officer in the County of Mendocino:** proof by affidavit having been made before me by

**Timothy Del Fiorentino #2725**

that there is probable cause to believe that the property/or person described herein may be found at the locations set forth herein and is lawfully seizable pursuant to Penal Code Section 1524 as indicated below by "X"(s) in that:

_____ it was stolen or embezzled.

_____ it was used as the means of committing a felony.

_X__ it is possessed by a person with the intent to use it as means of committing a public
        offense or is possessed by another to whom he or she may have delivered it for the
        purposes of concealing it or preventing its discovery,

_____ it tends to show that a felony has been committed or that a particular person has
        committed a felony,

_____ it tends to show that sexual exploitation of a child, in violation of Section 311.3 or
        depiction of sexual conduct of a person under the age of 18 years, in violation of Section
        311.11, has occurred or is occurring,

_____ there is a warrant for the person's arrest,

**YOU ARE THEREFORE COMMANDED TO SEARCH:** The premises, vehicle(s), and/or person(s) described in exhibit "A" attached hereto and incorporated herein by this reference.
**FOR THE FOLLOWING PROPERTY / PERSON:** The property and/or persons described in exhibit "B" attached hereto and incorporated herein by this reference.
**YOU ARE THEREFORE COMMANDED,** within five business days after receipt of this search warrant to deliver by mail or otherwise, to the above named law enforcement officer, together with the declaration as set forth below, a true, durable, and legible copy of the requested records listed in exhibit "B". See California Penal Code 1524.2.

**AND TO SEIZE IT IF FOUND** and bring it forthwith before me, or maintain it at a suitable location of a law enforcement agency pursuant to Penal Code section 1536. This Search Warrant and incorporated Affidavit, and all attachments thereto, were sworn to as true and subscribed before me this __8h__ day of __JULY__ 2022, at __245__ A.M./P.M. Wherefore; I find probable cause for the issuance of this Search Warrant and do issue it.

_____ (Judge of the Superior Court) **NIGHT SERVICE ENDORSED**

KEITH A. FAULDER                              ( ) YES (x ) NO

1

**FILED**

# STATE OF CALIFORNIA-COUNTY OF MENDOCINO

NOV 01 2022
CLERK OF MENDOCINO COUNTY
SUPERIOR COURT OF CALIFORNIA

MCSO#2022-15531.1

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

**Timothy Del Fiorentino #2725**, a Peace Officer, swears under oath that the facts expressed by him in this search warrant and affidavit and in exhibit "C", statement of probable cause, and any and all attachments thereto, are true and that based thereon he has probable cause to believe and does believe that the property and/or person described herein is lawfully seizable pursuant to Penal Code section 1524, as indicated herein, and is now located at the places herein set forth. Wherefore, affiant requests that this Search Warrant be issued. **Exhibits "A", "B", and "C", and all attachments thereto are attached hereto and incorporated herein by this reference.**

_____, NIGHT SERVICE REQUESTED ( ) YES (x) NO

**(Signature of Affiant)**

Subscribed and sworn before me this **8th** day of **July** 2022 at Ukiah, California at the hour of **2:45** a.m./p.m.

**JUDGE OF THE SUPERIOR COURT**

**KEITH A. FAULDER**

**District Attorney**
— **Approved as to form and content.**

2

# Exhibit "A"
# Premises, Persons and Property to be Searched:

Location #01: The property located at 78140 Crawford Road, Covelo, California 95428. The search is to include, but not limited to all outbuildings, sheds, barns, tents, plastic style greenhouses, vehicles, and travel trailers. The specific APN# associated with the property is, [032-460-33-00]. The property has the listed owner being, Lester Treppa 5/150 and Vacant 145/150 with a listed mailing address of 425 Lake Mendocino Drive in Ukiah Ca. 95482.

A. This search includes all buildings, outbuildings, sheds, structures, vehicles, trailers, travel trailers, locked safes or boxes, plastic style greenhouse, or any persons located on the property.

B. Driving directions to the locations are as follows:
From the intersection of Biggar Lane and Crawford Road in Covelo Ca. Continue north on Crawford Road for approximately 2000 feet. At this point, The paved roadway of Crawford Road turns to the left (West) and becomes Refuse Road. At the corner of Crawford Road and Refuse Road continue north off of the paved road onto a dirt road leading thought the dry creek bed. After crossing the dry creek bed, follow the red dirt road to the north for approximately 400 feet where the entrance into the marijuana cultivation site is located. The marijuana cultivation site is located at GPS coordinates [N 39.81945 W -123.26599].

C. Any and all person(s) located on either property during the execution of the search warrant, or who arrive to the location during the search warrant service.

3

# Exhibit "B"
# Items to be Seized:

1. Marijuana, cannabis, and/or concentrated cannabis in all forms: including, but not limited to, bud marijuana, marijuana plants, or any portion of the plant thereof, scissors, scales, measuring and weighing materials, packaging materials, or other materials used for marijuana distribution, or similar packaging material used to store marijuana, to include a extraction / collection vessel.

2. Tetrahydrocannabinol (THC) in all forms including, but not limited to THC edibles, THC vaporizing, and high THC marijuana plant strains, and all paraphernalia associated with said THC products.

3. Any firearms, ammunition, firearm parts, firearm accessories, or firearm storage devices.

4. Any heavy equipment, earthwork and land alteration activities, including but not limited to grading, earth moving, road construction, water storage, water diversion, streambed alterations culvert installations, land clearing, timber clearing, timber cutting equipment, and heavy equipment usage.

5. Any items associated with a hash or "honey oil" conversion laboratory. Items such as hash, hash oil and or derivatives of hash, Butane fuel or other solvents utilized in the marijuana to hash conversion process, PVC pipes, plastic or brass valves, fittings, glue, heating elements and flasks or other similar glassware.

6. Equipment, tools, and other items associated with and used for the cultivation, use, storage, or processing of marijuana, and the areas associated with the cultivation, storage, or, processing of marijuana, such as; irrigation devices, garden hoses, water buckets, timing devices, electronics devices, aerators, PVC pipe, water storage drums, water tanks, hoses, filter fittings, valves, water pumps, lights, timers, ballasts, power cords, extension cords, generators, air condition units, fans, shovels, rakes, pruning shears, hand held sprayers, planter pots, starter pots, grow pots, alligator clips, baggies, rolling papers, scales packaging materials and other weighing devices.

7. Any digital media or computer devices to include but not limited to camcorders, video cameras, surveillance cameras and recording equipment, digital storage devices, computers, laptops, tablets, and cell phones. Your affiant reserves the right to have such items seized examined by a qualified professional beyond the ten day period of the search warrant. This is to include the California Department of Justice, the FBI, or other Governmental agency.

4

a. As required by California Penal Code § 1546.1 (d); any information obtained through the execution of this warrant that is unrelated to the objective of the warrant shall be sealed and shall not be subject further review, use, or disclosure absent an order from the Court.

b. If necessary, investigating officers are authorized to employ the use of outside experts, acting under the direction of the investigating officers, to access and preserve any computer data at the time of the seizure or at any future time while the evidence is in the control of the investigating agency. Those items that are within the scope of this warrant may be copied and retained by investigating officers.

8. **FINANCIAL DOCUMENTATION:** to include any and all financial records to facilitate the investigation of the laundering of illicitly obtained monies and/or other forms of assets acquired through the sales, trafficking, or distribution of marijuana, and subsequent evasion of governmental taxes, which include, but are not limited to federal and state tax returns, employment papers, banking records and pass books, account information, canceled checks, deposit records, income and expenditures records, property acquisition records, money market accounts and/or similar accounts, records of stocks and/or bonds purchased or exchanged; credit card records; records reflecting the rental of safe deposit boxes; safe deposit box keys; records reflecting vehicles, aircraft or vessels owned, purchased, sold or leased; and negotiable instruments.

9. **INDICIA** including, but not limited to items related to, items showing evidence of dominion, control, or ownership of the locations, vehicles, storage areas, safes, lock boxes, or containers to be searched: including but not limited to keys; photographs; current and cancelled mail and mail envelopes; other items of correspondence such as utility bills and telephone bills; rental agreements; grant deeds; legal documents; maps of the property; escrow documents; airline tickets and other tickets of identification for other forms of public transportation; personalized luggage or luggage tags; forms of official identification and exemplars of original handwriting including drivers licenses, social security cards, passports, resident alien cards, food stamps and food stamp identification cards, signature cards, usage cards and applications, insurance documentation, Medi-cal cards or stickers, medical records bills, prescriptions and prescription bottles; articles of personal clothing of suspect(s) or co-conspirator(s); articles of personal property such as telephone books, address books, notebooks, and papers; other items reflecting the names, addresses, or telephone numbers of associates possibly involved in the conspiracy to obtain stolen property.

10. **OFFICERS ARE ALLOWED TO BRING OTHER GOVERNMENT AGENCIES ONTO THE PROPERTY** to be searched, including local, state and federal law enforcement officers, experts, and environmental scientists. This includes, but not limited to, the following agencies: the California Department Fish and Wildlife, the State Water Board, California Department of Fire and Forestry (CAL Fire), the Mendocino County Department of Health and Human Services—Division of Environmental Health, Air Quality Management District, and Mendocino County Code Enforcement.

5

11. **TO THE STATE WATER RESOURCES CONTROL BOARD, AND THE CALIFORNIA REGIONAL WATER QUALITY CONTROL BOARD, BIOLOGISTS FOR THE CALIFORNIA DEPARTMENT OF FISH AND WILDLIFE, NORTH COAST REGION ARE COMMANDED TO THE STATE WATER RESOURCES CONTROL BOARD, AND THE CALIFORNIA REGIONAL WATER QUALITY CONTROL BOARD, NORTH COAST REGION ARE ALLOWED TO INSPECT, INVESTIGATE, AND SEARCH, SAID INVESTIGATION TO INCLUDE** entering upon and conducting a visual inspection of the entire property and conducting and documenting such inspection by taking such samples and reviewing such writings and records that are kept and maintained on the Property as is necessary to determine compliance. The inspection may include: 1) entering the Property, observing the physical conditions of the Property, and any equipment located thereon and any operations, processes or other activities being conducted thereon, including, but not limited to, water diversions, graded areas, cultivated areas, road crossings, disposal areas, ponds, surface drainages, watercourses, material stockpiles, storage, and buildings located on the Property; 2) taking photographs and video of the physical conditions of the Property and any equipment located thereon and any operations, processes or other activities being conducted thereon; 3) questioning of or conferring with persons present on the Property privately to obtain information bearing on whether violations of the laws and regulations occurred; 4) the measurement of the pumping rate, if extant; the measurement of each reservoir's area, dam height, and diversion facilities, if extant; 5) collecting and analyzing samples of water, raw, graded, processed or stored materials, chemical, fuel, waste, and/or other stored or contained materials; 6) testing for water pollutants, including but not limited to sediment, fertilizers and pesticides, from any source whether mechanical, process, or natural; 7) inspection and duplicating any writings and records of spills or emergencies, business plans, contingency plans, or any other information authorized under California Water Code section 13267, subdivision (c).

12. It is the request of the Affiant that the Court orders the destruction of marijuana plant/products that it expects to seize in this matter pursuit to a duly authorized search warrant. Your Affiant requests this order by the Court, because bulk marijuana poses significant safety and health concerns. Marijuana products can decompose and liquefy rapidly and when stored can harbor mold and other bacterial elements. Your Affiant therefore respectfully request that the Court authorize/order the destruction of any seized marijuana after the plants are counted, photographed and after a representative sample pursuant to Health and Safety Code §11479 is taken from the location.

13. **Special Request for Officer Safety Purposes:**
Prolonged and extended manual labor is required to properly eradicate and destroy bulk marijuana and growing marijuana plants. As internal temperatures of hoop style greenhouses can be lethal and the potential of known (such as carbofuran, methamidophos, methyl parathion, and others) and/or unknown pesticides, which have been proven to cause severe life-threatening medical conditions, used during the marijuana cultivation process have increased
**You Are Authorized To:** ventilate and alter hoop style greenhouses and any other marijuana cultivation areas, structures, and places, including to remove doors or other

building materials from cultivation structures. Additionally, the use of heavy equipment (skid-steer and/or other implements) to assist in the eradication is also authorized, which can result in property damage, or the altering of the erected hoop houses/ greenhouses or other cultivation areas, structures, and/or places that house the illegal growing marijuana plants.

14. Any other items by their nature that constitute a felony.

# Exhibit "C"
# Statement of Probable Cause

Your affiant states he has received the following training and experience in the field of criminal investigation:

**Timothy H. Del Fiorentino #2725**

Your affiant has been employed as a sworn Peace Officer by the Mendocino County Sheriff's Office since January, 2018. Your affiant has received the following training and experience:

- Your affiant was a Corrections Deputy with the Mendocino County Sheriff's Office from April, 2015 – July, 2017.

- Completion of an 196 hour Basic Corrections Core academy at Santa Rosa Junior College Public Safety Training Center, in Windsor, California. As part of that training your affiant received training in maintaining security and contraband, criminal justice system (state codes and statutes), emergency procedures, first aid/CPR, restraint techniques and control holds.

- While employed as a corrections deputy, your affiant observed no less than 100 people under the influence of a controlled substance and/or alcohol.

-Your affiant has completed over a 900 hour P.O.S.T. Basic Law Enforcement Officer course at College Of The Redwoods Police Academy, in Eureka, California. As part of that training your affiant received state mandated training in defensive tactics, chemical agents, pursuit driving, interview techniques, basic evidence gathering, introductory traffic investigation, an 11550 H&S evaluation class, a basic drug identification course, property crimes investigations, operation and qualification of handgun and shotgun, and completion of a training course meeting the requirements of Penal Code section 872(b): Hearsay Evidence Testimony.

-A 12 week Field Training phase with the Mendocino County Sheriff's Office. During the training phase your affiant's training expanded upon the academy curriculum. Your affiant had a training officer who had testified as narcotics expert and gang expert (Robert Moore).

-Your affiant has been primary investigating Deputy on more than ten felony cases, resulting in over 10 felony arrests.

-Your affiant has competed a Search Warrant A-Z class, which consisted training on how to author a search warrant and the service of search warrants.

-Your affiant has contacted in the field more than ten subjects under the influence of Methamphetamine, and has been trained to evaluate those subjects by Mendocino County Sheriff's Office FTO's. During these contacts your affiant has discussed the effects of methamphetamine upon the body and mind with the subject, as well as the habits for their use.

-Your affiant has arrested no less than five subjects for being under the influence of methamphetamine or heroin, and has received 1 negative toxicology results from those arrests.

-Your affiant has arrested no less than four subjects for possession of methamphetamine or heroin, and has never received negative test results on presumptive methamphetamine or heroin submitted to CA DOJ for testing.

-Your affiant has handled numerous quantities of packaged methamphetamine, heroin, and marijuana while wearing gloves and with bare hands.

-Your affiant has taken part in no less than five marijuana eradication operations while employed as a Deputy with the Mendocino County Sheriff's Office and has seen growing marijuana plants on no less 50 occasions.

-Your affiant has smelled growing and burning marijuana no less than fifty times.

-Your affiant has observed growing marijuana from the air no less than 4 times and has been trained in the recognition of marijuana plants from above by a supervisor who had testified as a marijuana expert (Clint Wyant)

**Your affiant says that the facts in support of the issuance of a search warrant are as follows:**

The following statement details this investigation and the reason for the search and seizure of the listed items/property:

On 07/07/22, Sgt. Wyant with the Mendocino County Sheriff's Office County of Mendocino Marijuana Enforcement Team (C.O.M.M.E.T.), with the assistance of Special Agent Rowan, conducted an over flight in the area of Covelo California. During the over flight, Sgt. Wyant and Agent Rowan observed a large marijuana cultivation site located at 78140 Crawford Road. Sgt. Wyant observed no less than nine hoop style greenhouses on the property and observed green growing marijuana within at least six of the greenhouses. Sgt. Wyant estimated no less than 400 growing marijuana plants were observed within the hoop style greenhouses, but stated he believed there to be over 1,000 marijuana plants in total on the property.

Sgt. Wyant provided me with a photograph of the property which was consistent with his above statement to me. The photograph was attached to this document as "Exhibit D".

I began an investigation into the property. During the investigation I conducted an online parcel search and learned the property had a listed address of 78140 Crawford Road, Covelo CA. and an exact APN# of [032-460-33-00]. The property was listed as a 5 acre parcel The owners of the property were listed as Lester Treppa 5/150 and Vacant 145/150 with a listed mailing address of 425 Lake Mendocino Drive in Ukiah Ca.

I checked the most recent Department of Cannabis Control (DCC) licensing spreadsheet for the property, which was current as of 06/29/22. The state licensing spreadsheet showed there were

9

no active cultivation licenses through the State of California, for the purpose of cultivating marijuana in excess of six plants for the property.

On 07/08/22, I contacted Department of Cannabis Control (DCC) Special Investigator Jaime Masuda regarding the parcel. Special Investigator Masuda confirmed the property did not have a valid permit or current license through the State of California for the purpose of cultivating more than six marijuana plants.

Based on my investigation and Sgt. Wyant's observation of growing marijuana plants within the greenhouses on 07/07/22, it appears unknown subjects on the properties are cultivating more than six marijuana plants in violation of section 11358(c) H&S.

It has been my training and experience individuals involved in the marijuana trade and dealers commonly maintain some records of transactions similar to those of a legitimate businessperson. These records are commonly kept either in the residence, vehicle, on their person or the person doing the maintenance of the cultivation area. These documents include receipts, contracts, and estimates for work performed related to various aspects of cultivation site development. Such site development activities include road construction and maintenance, earth-moving work, landing development, general construction, greenhouse construction, electrical work, and associated infrastructure development. It is also my training and experience that marijuana cultivators and dealers will take home movies and photographs of themselves depicting site development and other construction activities.

Based on my training and experience, I know individuals that engage in the unlawful cultivation of marijuana may also be involved in manufacturing black market honey/hash oil often engage in black market sales of honey/hash oil. These individuals often maintain, manipulate, measure, weigh and package their products at place of relative safety. These places of safety include but are not limited to households, apartment, trailers, storage units, or any other location in which they have domain or control of. These products are often packaged into predetermined amount and sold for predetermined amounts. Based on my training and experience, I know it is common for individuals engaged in black market sales of cannabis to only travel with an amount on their person when a deal had already been brokered. Often times these individuals will travel to their "stash" or "grow" location acquire their product for the pre-arranged deal and travel directly to the agreed upon transaction.

Additionally, I have found it necessary to seize keys, papers, and other documents, which tend to show dominion and control by persons, present or not, over areas where contraband is found. The papers and documents include bills, correspondence and receipts. In virtually all locations I have searched during prior investigations, I have observed utility bills pertaining to the location, and personal letters addressed to occupants of the location, which will identify persons in control of the premises.

Based on my training experience, I know that person(s) who cultivate marijuana, or who are involved in the marijuana trade know the value of their product. I know marijuana and other illicit drug sales generate large amounts of unreported cash and these caches of money are often too large to be placed into legitimate banking institutions without raising suspicion and

10

prompting an investigation by law enforcement. Based on my training and experience, I know large amounts of cash are located in the home, or properties of marijuana distributors. Many subjects involved in the marijuana trade will not contact law enforcement in regard to their affairs if they fall victim to a robbery, or assault, fearing an investigation will lead to their apprehension and prosecution. Therefore, marijuana cultivators will often arm themselves against subjects who would attempt to commit robbery and burglary of their illegal substances and profits, and many times these subjects are armed when confronted by law enforcement.

Based on my training and experience, I know it is common for people who cultivate, store, process, use, and sell marijuana, and other drugs to arm themselves with, but not limited to firearms, crossbows, knives/swords, bows and arrows, billy clubs, and other weapons for what they claim to be personal "protection" from "rip-offs" and other thefts or assaults against them.

I know that during the service of this Search Warrant there may be articles of personal and/or business property tending to establish the identity of persons who have dominion and control over the premises, business, vehicles, and/or items to be seized. I believe that these items will tend to connect the premises, locations, persons, and vehicles to be searched with the items to be seized and the case being investigated. It is my opinion that these types of items are usually present at the location sought to be searched by this Search Warrant and that they will therefore likely still be found in the location, and/or the person to be searched.

I know that persons involved in marijuana cultivation frequently have cellular telephones that have internet capabilities just as a home computer does. I know from my training and experience that people communicate today with cellular telephones via text messaging, multimedia messaging, and by telephone calls on regular basis. This electronic data including the call history, contact list (address book), inbound/outbound text messages, and inbound/outbound/missed telephone calls can provide additional evidence in this criminal investigation.

Based on my training and experience and previous investigative experience, I know people who possess, possess for sale and cultivate marijuana, use the telephone to arrange sales and purchases of marijuana and often deliveries to their residence or make deliveries from their residence pursuant to these telephone calls. Answering the telephone will produce further evidence possession for sale of cannabis on the occupant (s) of the residence and may reveal the identity of person and persons who may have purchased the cannabis in the past or may reveal the source of the marijuana. I request that the searching officers are granted authorization to answer any and all telephones, including cellular telephones and converse with callers who appear to be calling in regard to cultivation, possession and/or the possession for sales of cannabis, note and record the conversation without revealing their identity, but only for the time reasonably required to execute this warrant.

Based upon the foregoing investigation, facts stated herein, and my training and experience, I believe the crime of 11358(c) HS was committed and that evidence of such crime, as described in exhibit "B", will be found at the locations described in exhibit "A". Furthermore, it is your affiant's opinion that the execution of a search warrant would reveal other potential felony crimes. For the reasons stated above, I request this court issue a warrant to search for such items.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

# Exhibit "D"



# EXHIBIT G

**Mendocino Sheriff** ✔ · **Follow**
October 15, 2022 · 🌐

The Mendocino County Sheriff's Office has been working extremely hard this year. With all your help the Sheriff's Office Marijuana Enforcement Team has seized over 200,000 marijuana plants, almost 30 tons or processed marijuana and 43 firearms.  We have been forced to focus our efforts on the most egregious violators due to the extreme shortage in personnel which most law enforcement agencies are facing.  This was just a drop in the bucket.  We are looking much better than we were last year in many areas, however we have a long way to go until we have this problem cleaned up. I continue to receive calls from residents concerned about violence and environmental degradation. Please understand we are trying very hard to get to all of the problem locations.

Recently I read an article, in which a press release completed by Attorney General's Office was quoted.  I don't know how many people in Mendocino County read this article however I found it to be a little insulting.  This article seemed to be declaring the legalization of marijuana a success in California.  Sadly, as I read the article and realized, Sacramento must be a long way from Mendocino County.  I began to wonder if the policy makers truly understand what's going on in rural California.  It's not that they haven't been told yet it seems they probably aren't listening.  Clearly the roll out of legalized marijuana has been a much different experience for those of us living in the emerald triangle.

Reading this press release made me realize those of us who have seen our county at a time prior to legalization and at a time following it, have a much different view of what has occurred here. I can tell you, as a rural sheriff I feel as if the policy makers came to our county, hit it with a wrecking ball then began praising themselves for offering us a broom to clean up the mess.

The article stated, "California has the largest safe, legal and regulated cannabis market in the world, but unfortunately illegal and unlicensed grows continue to proliferate."  I have not seen a safe, legal, or regulated market in Mendocino County.  I doubt the families of the homicide victims murdered in grow sites over the last few years would agree with this statement.  I also doubt the legal cultivators, many of whom have poured their life savings into a failing system would agree either.

In 2020 I, along with other Northern California Sheriffs, met in Trinity County with members of the state's marijuana policy team.  During this meeting we asked several questions including, what are the plans for enforcement against drug trafficking organizations as well as how would they deal with the marijuana being diverted to the black market and shipped out of state.  We also brought up the struggles of finding personnel and asked who would be handling the enforcement of the massive wave of illegal marijuana which we all knew was coming.

As the conversation continued, we asked if the state had any plans to regulate the market ensuring these things wouldn't happen.  We asked if they had a target number of product production which would supply the needs of legal marijuana within the state.  We pointed out the fact that producing beyond market saturation would cause diversions to the black market.  The black market would have a negative impact on legal farms and as the prices drop, the violence, environmental impacts and damage to the legal farms would continue and escalate.  If the black market isn't dealt with all legal markets will fail.  That is simply a fact.  All these questions seemed to fall on deaf ears. The issues we are currently facing were predicted in that meeting by the rural sheriffs in California.

The article went on to discuss future direction to focus on environmental, economic, and labor impacts from illegal cultivation.  I didn't see anything discussing the violence which has been long associated with  drug trafficking organizations.

Homicides, robberies, and environmental destruction have become the new normal for rural communities.  We had two rolling shootouts in the Ukiah and Willits area on highway 101 this year.  Drug Trafficking Organizations are not one trick ponies.  Once they have established a footing in our rural areas, they bring fentanyl and other hard drugs as well as human trafficking, violence, and intimidation.  We are seeing these things occur and continue to occur in our county.  We simply can't have this in Mendocino County.

State agencies such as the California Department of Fish and Wildlife, are incredibly helpful for us in Mendocino County.  They are stretched incredibly thin as almost all law enforcement agencies currently are. The state CAMP program is extremely helpful as well.  These agencies have always been force multipliers. Sadly, the CAMP program is a shadow of what it once was, we only received 7 days of assistance from them this year.  The problem isn't with boots on the ground, it's the policies which have restrained us from making true impacts.

7 days of assistance from them this year. The problem isn't with boots on the ground, it's the policies which have restrained us from making true impacts.

Over the past several years we have been working hard with staffing shortages, we've taken on these issues, and I am happy to report we are making a small dent in many areas. It is a small dent however, we will continue to work on this. This all comes with a price. Our deputies are placed in danger each time they enter one of these sites. We must work collaboratively to meet the current needs. Again, locals are being placed in harms way due to decisions made by policy makers far from the problems.

We did receive some assistance this year from our legislators, I would like to thank Senator McGuire, who came through for rural counties providing funding through the state to assist us in our work regarding these issues. I am very grateful for his assistance.

We must stay focused and continue to work towards a solution that will meet the needs of our communities. If we don't continue to progress things will digress again. Little to no enforcement on the illegal market has created the perfect storm for our communities.

In order to face these new challenges, I have been and will continue to work with other sheriffs including Lake, Humboldt, Trinity, and Butte Counties. We are continuing to work together and support each other as we investigate these crimes. We need the state policy makers to step up and provide more personnel for enforcement, also we need them to change the flawed policies which have brought these problems to our communities. The first step to fixing a problem is admitting there is one. Without changes in policies these issues will continue. Please help us by letting Sacramento know there is a problem. Reach out to our state leaders and legislators, let them know we have a problem and together we can come together to find a solution.

Thank you,

Sheriff Matt Kendall

        20 

 Home



**Mendocino Sheriff** ✔
August 2 at 3:44 PM · ⊙ ···

Last week we completed several investigations into illegal marijuana cultivations in the Round Valley. I wanted to take a few minutes to explain what we are dealing with.

Several years ago, I along with several Northern California Sheriff's met regarding the violence, human trafficking, drug trafficking organizations and environmental degradation we were seeing in illegal marijuana grow sites throughout Northern California. We began a partnership realizing we were all facing the same issues at a time when we are all facing personnel shortages. This partnership has allowed us to concentrate on the most egregious violators.

We were very fortunate to have Senator McGuire who assisted in this coordinated effort and was able to work with us to secure funding which helps combat these sites. This funding through the state lightened the financial load for our counties and allowed all agencies to work together investigating the worst offenses causing violence, human trafficking, and environmental degradation.

Last week we had a terrible crime occur in the Round Valley area in which a robbery of marijuana was attempted. This resulted in assaults with deadly weapons, a vehicle pursuit and crash, gun fire and violent assaults. These are the type of crimes which we continue to see with the illegal marijuana trade and this is why we have formed these partnerships.

We were able to arrest the suspects in this case, however they were badly beaten by residents in the area. One of the suspects was released to a hospital due to major injuries, while the other suspect, who was on federal parole, is currently in custody with the federal prison system and awaiting charges in Mendocino County.

These are the crimes which continue to endanger neighborhoods. These are the reasons we are continuing to investigate illegal cultivations.

Thanks to the previously mentioned partnerships, the Mendocino County Sheriff's Office collaborated with the Humboldt County Sheriff's Office regarding illegal cannabis being cultivated in Round Valley. We utilized air assets for overflights identifying numerous cannabis cultivation sites throughout the valley.

In collaboration with partnering agencies, further investigations into the properties identified during overflights continued. A total of 18 locations were ultimately chosen to be targeted for search warrants based on several factors. The locations had an overwhelming amount of illegal cannabis being grown, were not county or state licensed and/or appeared to also have environmental impact crimes taking place. These lands were identified as being private properties, as well as state and tribal lands.

Based on the number of sites as well as the overwhelming amount of marijuana being cultivate at these locations, we requested even more assistance from allied agencies. The following agencies assisted in the enforcement effort: Humboldt County Sheriff's Office, Mendocino Cour Sheriff's Office, Trinity County Sheriff's Office, Siskiyou County Sheriff's Office, along with the California Department of Fish & Wildlife (including environmental scientist staff). California

       

During the search warrant services, numerous subjects were detained. In addition, many others were observed fleeing the locations from these large scale grow sites.

Now please think about these numbers.  In 2 days, we were able to eradicate a total of 62,117 marijuana plants.  A total of 31,284 pounds of processed marijuana was also located.  There were 3 illegal AR 15 style rifles (Ghost Guns) and an illegal short barreled rifle located within the grow sites.  Illegal pesticides (Carbofuran and Methamidophos) were also located on several properties and appeared to be used in the illegal cultivation of marijuana.  We, along with the Humboldt County Sheriff's Office, are preparing criminal cases that will be sent to the District Attorney's Office for charging considerations.

Let me be clear about this, we will continue to investigate these crimes and will continue to charge the violators.  For every person who complains regarding the enforcement, we receive calls of gratitude from many others including our elders and people raising children who have been afraid to simply walk through their neighborhoods.  Therefore, we will continue to investigate these crimes and work towards safety in our rural areas.

To all the folks who have reached out to my office with gratitude for this work, you are welcome and thank you for your support in this endeavor.  We will keep after this until such time our communities are again safe.

Sheriff Matt Kendall



20+ I have received many calls from Round Valley | Mendocino Sheriff | Facebook






## Mendocino Sheriff's Post

 **Mendocino Sheriff** ✔

August 12, 2024 · 🌐

I have received many calls from Round Valley Resisents this week. Therefore I wanted to reach out to the residents of the Round Valley / Covelo area and provide the following information regarding marijuana enforcement.

Following the recent investigations into illegal marijuana cultivation in the Covelo/Round Valley area, I received correspondence from the Round Valley Indian Tribes, Tribal Council. This correspondence was a cease-and-desist request asking The Mendocino County Sheriff's Office stop marijuana enforcement on Round Valley Indian Tribal Lands.

The Sheriff's Office has asked County Counsel to review the letter from the Tribal Council.

We receive a lot of calls from residents to enforce marijuana laws on and off of tribal lands in the Round Valley area. The Sheriff's Office asks for patience as we evaluate the Tribe's position and assertion of sovereignty over marijuana cultivation and possession for sale.

The Sheriff's Office will continue to review each reported criminal violation on a case-by-case basis to determine whether or not the enforcement can be completed.
The Tribal Council's assertion of sovereignty will not deter our work on fee lands not held within trust and enforcement will continue there.

With the ever-changing landscape of laws surrounding marijuana cultivation, possession for sales, and sales of marijuana we can see there have been many problems that need to be worked out. I pray there will come a time when we no longer see violence, banned chemicals, blight and environmental degradation caused by marijuana cultivation.

Thank you
Sheriff Matt Kendall



 Write a comment...