UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

ROUND VALLEY INDIAN TRIBES, et al.,

Plaintiffs,

v.

MATT KENDALL, et al.,

Defendants.

Case No.  25-cv-03736-RMI

**ORDER ON MENDOCINO DEFENDANTS' MOTION TO STRIKE AND/OR DISMISS**

Re: Dkt. No. 75

Pending before the court is Defendants Mendocino County and Sheriff Matthew Kendall's ("Mendocino Defendants") Motion to Strike or, in the alternative, Dismiss the Second Amended Complaint ("Motion to Strike"). (Dkt. 75.) Plaintiffs have filed their opposition to the Motion, along with a request for judicial notice. (Dkts. 77, 78.) Mendocino Defendants replied and filed a separate objection to the request for judicial notice. (Dkts. 80, 81.) For the foregoing reasons, the Motion is DENIED.

**BACKGROUND**

This matter involves a case brought by Plaintiffs April James, Eunice Swearinger, Steve Britton (collectively, "Individual Plaintiffs"), and the Round Valley Indian Tribes ("the Tribe"), against Mendocino Defendants and Defendants Humboldt County, Sheriff William Honsal, and Deputy Justin Pryor (collectively, "Humboldt Defendants"), California Highway Patrol, and Commissioner Sean Duryee (collectively, "CHP Defendants"). (Compl., Dkt. 1.)

On January 29, 2026, this court entered an Order granting in part and dismissing in part two motions to dismiss, one filed by Mendocino Defendants and the other by Defendant Sean Duryee. (Order, Dkt. 64.) In that Order, this court dismissed with prejudice Plaintiffs' first and

United States District Court
Northern District of California

second claims in their First Amended Complaint ("FAC")—the first claim alleged that Defendants had violated the jurisdictional limits of 28 U.S.C. § 1360(a) ("Public Law 280" or "PL 280") by enforcing California's Health and Safety Code cannabis provisions on the Tribe's reservation, and the second claim alleged that Defendants had violated the Tribe's sovereignty and right to self-government by enforcing state cannabis law on the reservation instead of respecting the Tribe's right to make its own laws regarding cannabis. (FAC, Dkt. 35.) This court found that California's cannabis-related Health and Safety Code, particularly those provisions concerning the cultivation and sale of cannabis, were criminal rather than civil/regulatory laws and therefore Defendants had jurisdiction to enforce them under Public Law 280 and did not violate the Tribe's sovereignty in doing so. Because the court found that Plaintiffs' legal theory that Defendants did not have jurisdiction to enforce state cannabis law on the reservation had failed, the court dismissed the first and second claims with prejudice, along with all elements of the remaining claims that relied on those legal theories.

Plaintiffs filed their Second Amended Complaint ("SAC") on February 23, 2026. (Dkt. 71.) In the SAC, Plaintiffs amended some claims as allowed by the court's Order and added new claims based on Public Law 280 and tribal sovereignty. The first cause of action in the SAC (hereafter "Claim One") is brought against all Defendants and is titled "Violation of PL 280 (Enforcement of County Civil/Regulatory Laws in Indian Country)." (SAC at 34.) The claim alleges that Defendants' enforcement actions on the reservation were intended to enforce Mendocino County ordinances and code provisions rather than state criminal law, which is a violation of Public Law 280's prohibition on the enforcement of local regulations on Tribal land. (SAC ¶¶ 138–47.) Plaintiffs cite to Mendocino County's "extensive cannabis regulatory ordinances," as well as the county's nuisance abatement procedures, local cannabis licensing ordinances, and land use and environmental ordinances, and argue that Defendants' behavior in obtaining and executing the warrants was consistent with these provisions rather than with criminal law enforcement. (SAC ¶¶ 141–43.) Claim One also alleges that Defendants violated 28 U.S.C. § 1360(b) by attempting to enforce county and state laws regulating land use and water rights. (SAC ¶¶ 145, 148.) Accordingly, Claim One requests (1) declaratory relief finding that

2

Defendants lack jurisdiction to enforce Mendocino County ordinances on the reservation; (2) injunctive relief enjoining Defendants from searching or destroying Plaintiffs' property and property on the reservation for violations of county ordinances; and (3) damages in an amount over $10,000.00 for Individual Plaintiffs' costs in repairing and replacing their property. (SAC ¶¶ 152–54.)

The second cause of action in the SAC (hereafter "Claim Two") is titled "Infringement of the Tribe's Sovereignty—28 U.S.C. § 1360(c) (Interference with Tribal Law and Tribal Self-Governance)" and is also brought against all Defendants. (SAC at 37.) This claim alleges that the Tribe's Compassionate Use Ordinance is consistent with California's medical cannabis laws and must be given "'full force and effect' in civil matters arising in Indian country" under 28 U.S.C. § 1360(c). (SAC ¶ 158.) Plaintiffs allege that Defendants failed to give full force and effect to the Tribe's Compassionate Use Ordinance by enforcing county ordinances rather than respecting the Tribe's regulations. (SAC ¶¶ 155–61.) Plaintiffs argue that Defendants' disregard for PL 280 jurisdictional limits and their enforcement of local regulatory ordinances on the reservation is impermissible interference with the Tribe's regulatory authority and self-governance. (SAC ¶¶ 162–63.) They also allege that Defendants' practice of raiding trust allotments without notifying or working with Tribal Police infringes on the Tribe's sovereignty and undermines its self-governance, and, finally, that Defendants' refusal to provide law enforcement services on the reservation in retaliation for the Tribe's cease-and-desist letter also constitutes interference with tribal self-governance and public safety. (SAC ¶¶ 164–65.) Claim Two requests injunctive and declaratory relief "affirming the Tribe's authority to regulate cannabis on trust allotments, prohibiting Defendants from interfering with tribal law, and prohibiting Defendants from enforcing County civil/regulatory ordinances in Indian country." (SAC ¶ 168.)

The SAC contains ten more causes of action: Claim Three for Fourth Amendment violations via Section 1983 against the individual Defendants; Claim Four for Fourth Amendment violations via Section 1983 against the county Defendants; Claim Five for "Statutory Liability Under California Government Code § 815.2" against the County Defendants; Claim Six for Bane Act violations against Mendocino and Humboldt Defendants; Claim Seven for negligence against

United States District Court
Northern District of California

3

Mendocino and Humboldt Defendants; Claim Eight for Fourteenth Amendment violations via Section 1983 against Mendocino Defendants; Claim Nine for false imprisonment against all Defendants; Claim Ten for trespass to land against all Defendants; Claim Eleven for conversion against all Defendants; and Claim Twelve for intentional infliction of emotional distress against all Defendants. (SAC at 39–56.) The SAC no longer identifies Commissioner Duryee and California Highway Patrol as defendants.

After Plaintiffs filed the SAC, Mendocino Defendants filed this Motion to Strike or, in the alternative, Dismiss. (Dkt. 75.)

**LEGAL STANDARD**

Under Rule 12(f) of the Federal Rules of Civil Procedure, a party may file a motion requesting that the court strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Matter is immaterial if it "has no essential or important relationship to the claim for relief or the defenses being plead." *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 967 (9th Cir. 2014) (quoting *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)). Similarly, impertinent matter "consists of statements that do not pertain, and are not necessary, to the issues in question." *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081 (9th Cir. 2025) (quoting *Fantasy, Inc*, 984 F.2d at 1527). Matter may be redundant if it "appear[s] anywhere else in the complaint." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010). "'Scandalous' matters 'cast a cruelly derogatory light on a party or other person.'" *Stiles v. Wal-Mart Stores, Inc.*, No. 214CV02234MCECMK, 2018 WL 3093501, at *2 (E.D. Cal. June 20, 2018) (quoting *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000)).

Motions to strike are disfavored and "generally will not be granted unless it is clear that the matter to be stricken could not have any possible bearing on the subject matter of the litigation." *In re Facebook PPC Advert. Litig.*, 709 F. Supp. 2d 762, 773 (N.D. Cal. 2010); *accord Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010) (Motions to strike "are generally disfavored because the motions may be used as delaying

4

tactics and because of the strong policy favoring resolution on the merits."). Moreover, Rule 12(f) is not a proper avenue for disposing of claims found to be precluded by law or that otherwise fail to state a claim for relief. *Whittlestone, Inc.*, 618 F.3d at 974.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim for which relief may be granted. Rule 12(b)(6) requires dismissal when a complaint lacks either a "cognizable legal theory" or "sufficient facts alleged" in support of such a theory. *Godecke v. Kinetic Concepts, Inc.,* 937 F.3d 1201, 1208 (9th Cir. 2019) (citation omitted). A complaint contains sufficient factual allegations if it pleads enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In turn, a claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Plausibility is a context-specific task that requires the reviewing court to determine if the well-pleaded facts permit the court to infer more than the mere *possibility* of misconduct. *Id.*

When evaluating a motion to dismiss, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)). Courts may not consider material beyond the pleadings, with a few exceptions: exhibits attached to the complaint as well as facts or documents subject to judicial notice or incorporation by reference. *See, e.g.*, *United States v. Corinthian Colleges*, 655 F.3d 984, 998–99 (9th Cir. 2011). The court may also consider the existence of certain documents referenced or relied upon in the complaint without taking notice of the facts contained within those documents when their contents are disputed. *Id.* at 999. Under Rule 12(b)(6), courts are focused on the sufficiency of the allegations rather than resolving factual disputes.

United States District Court
Northern District of California

5

**DISCUSSION**

**1. Motion to Strike[1]**

Mendocino Defendants first move the court to strike Claim One and Claim Two from the SAC because (1) these claims "amended and re-plead" the previously dismissed claims in violation of the court's prior order and without leave to amend, (2) Plaintiffs' use of a different legal theory in the SAC does not cure their unauthorized amendment, (3) the new allegations in these claims are irreconcilable with the prior pleading and "judicial admissions" therein and thus need not be accepted, and (4) Defendants are prejudiced if they are forced to litigate against identical claims re-alleged without court approval. (Mot. Strike, Dkt. 75, at 13–16, 18–21.) For the same reasons, Mendocino Defendants ask that every element of the other claims that relies on Claims One and Two be stricken as well. Plaintiffs oppose the request to strike and argue that a motion to strike under Rule 12(f) is not a proper vehicle for dismissing entire claims for relief and is not warranted by the circumstances of this case. (Pls.' Resp., Dkt. 77, at 8–10.) They also argue that they have legitimate reasons for alleging the new legal theory, including the discovery of new

---

[1] Plaintiffs requested that the court take judicial notice of four exhibits as part of their response to the Motion: (1) the Mendocino County Policy No. 3 on administrative inspections; (2) a declaration by Defendant Pryor and the attached exhibits; (3) news articles on county task force operations; and (4) Defendant Kendall's Facebook posts. (Pls.' Request for Judicial Notice, Dkt. 78.) They separately ask the court to incorporate by reference the Tribe's cease-and-desist letter to Mendocino County from July 24, 2024. (*Id.*) They argue that judicial notice of the documents is appropriate because they are all publicly available and form the basis of claims in the SAC. (*Id.*) Mendocino Defendants oppose the request on the grounds that the documents are mentioned in the SAC but do not actually form the basis of any claim, and that the documents are irrelevant; they additionally oppose judicial notice of the news articles because the contents of the articles are in dispute. (Defs.' Objs., Dkt. 81.) First, judicial notice is not necessary for the Pryor Declaration and its attached exhibits or Defendant Kendall's Facebook posts, as those documents were attached to the SAC and may be considered as part of determining whether Plaintiffs could prove facts supporting their claims. *See, e.g.*, *Durning v. First Bos. Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987) ("If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint" in evaluating a motion to dismiss). The court declines to take judicial notice of the news articles because their contents are contested and they do not substantially form the basis for any claim at issue. The court will take judicial notice of the Mendocino County Policy No. 3, because it is a document in the public record whose contents are undisputed; however, Exhibit A to Plaintiffs' Request for Judicial Notice includes not only the county policy but also a number of administrative warrants that are not referenced in the complaint and not explained by the judicial notice request. As such, the court judicially notices only pages one through four of Plaintiffs' Exhibit A, (Dkt. 78), and does not take notice of the administrative warrants. The court declines to incorporate by reference the cease-and-desist letter because it does not form the basis of any claim at issue in the instant Motion and incorporation is unnecessary. Finally, the court notes that most of the documents listed and their contents are referenced in the SAC, and it is not necessary for the court to judicially notice them in order to consider their existence or the allegations made about them in the SAC.

facts since the filing of the FAC; that even if the new and old claims are contradictory, that does not warrant striking the new claims; that the SAC's claims are entirely new rather than amended versions of the dismissed claims, and thus they complied with the court's prior order; and that the challenged material cannot be stricken because it contains new allegations that are relevant and material to their case. (Pls.' Resp. 4–12.)

After reviewing the briefing and the SAC, the court declines to exercise its discretion to strike Claims One and Two from the SAC. As an initial matter, the court acknowledges that Plaintiffs' SAC goes beyond the court's prior order and violates the Federal Rules. The court's prior order dismissed Claims One and Two with prejudice, dismissed Defendant Duryee from Claim Three in his official capacity without prejudice, dismissed Claim Four against Mendocino Defendants with leave to amend, and denied the motions to dismiss on all other grounds. The Order gave Plaintiffs explicit leave to amend the fourth claim against Mendocino Defendants "to plead a specific tort injury or injuries." (Order, Dkt. 64, at 24.) Plaintiffs have already amended their complaint once—all further amendments to the pleadings are subject to Rule 15(a)(2), which allows parties to amend pleadings only "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Plaintiffs' SAC includes not only the amended Claim Four but also Claims One and Two; whether Claims One and Two constitute new claims or amended versions of the dismissed claims, Plaintiffs did not have leave of the court to amend or add these claims, and they did not submit Defendants' written consent to such amendment. Plaintiffs' argument that the claims are new legal theories based on new evidence does not cure their failure to get approval from the court or from Defendants before adding these claims to their complaint.

However, "[e]xceeding the scope of a court's leave to amend is not necessarily sufficient grounds for striking a pleading or portions thereof." *Lamumba Corp. v. City of Oakland*, No. C05-2712 MHP, 2006 WL 3086726, at *4 (N.D. Cal. Oct. 30, 2006) (collecting cases). Unapproved claims in an amended complaint may be stricken if they are specious or cause prejudice to the defendants, or otherwise fall into the categories of material contemplated by Rule 12(f). *Id.* First, Claims One and Two are not specious or immaterial. Plaintiffs attest that the new claims are based on new facts that they learned after filing the FAC, and the SAC includes new, relevant evidence

7

and allegations, including an additional search warrant and more information about which officials participated in the searches. The jurisdictional and sovereignty claims are related to the other claims and are tied to them in the SAC, and they speak to the heart of the dispute between the parties. Moreover, besides the invocation of PL 280 and sovereignty, the new claims do not reallege the arguments previously rejected by the court. As such, the claims are not irrelevant or immaterial and they are based on new, legitimate factual allegations.

Second, Defendants would not be unduly prejudiced if the new claims are not stricken from the SAC. Defendants would not be forced to litigate against identical claims to those already dismissed because the new and old claims are not duplicates. The court's previous dismissal was concerned with the status of California state cannabis laws, which the court found to be criminal and enforceable on the reservation under PL 280, invalidating the jurisdictional claim and all other claims which relied on the jurisdictional claim's viability.[2] In contrast, the new claims are predicated on factual questions concerning Defendants' motives, the procedure for obtaining the search warrants, the scope of the warrants, and the execution of the warrants; the PL 280 legal questions require different analysis and rely on separate, established caselaw.[3] Even though the new claims fall under the identical titles of PL 280 jurisdiction and tribal sovereignty, the legal and factual questions are completely different, and the new and old claims cannot be considered duplicates of each other.[4]

---

[2] In the FAC, Plaintiffs alleged that Defendants obtained and executed search warrants for marijuana offenses under the California Health and Safety Code, that this conduct was illegal because state marijuana laws were civil/regulatory and thus Defendants lacked enforcement jurisdiction under Public Law 280, and that this unauthorized conduct infringed on tribal sovereignty. (FAC, Dkt. 35.)

[3] Now, the claims allege that the search warrants were not intended to investigate crimes but instead were used to enforce local codes and state environmental laws; that this enforcement violated PL 280, because PL 280 does not authorize the enforcement of local codes on Indian Country; that the enforcement action also violated 28 U.S.C. § 1360(b) barring state regulation of land use and water rights on federal trust property; that the execution of the search warrants infringed on tribal sovereignty in part because of the lack of jurisdiction, but also for a number of other reasons; and that the search warrant was improper because it was obtained via material omissions, including that it was to be executed on Indian country and that it would be used to enforce local ordinances. (SAC ¶¶ 137–68.) The SAC also alleges additional facts about Defendants' conduct intended to support these claims, and it includes two of the three search warrants authorizing the searches of the Individual Plaintiffs' properties (whereas the FAC included only one), (SAC Ex. J.).

[4] Mendocino Defendants argue in response that the use of a new legal theory is not sufficient to revive causes of action that were previously dismissed with prejudice. While some courts have stricken claims which purported to allege new legal theories under previously dismissed causes of action, *see VNT Prop. 1, LLC v.*

While Defendants would have to expend additional time arguing the new claims, the scope of the case and the relevant discovery would not be unjustifiably expanded as all the claims are based around the same locus of events. Moreover, contrary to Mendocino Defendants' assertions, allowing the claims to remain would not reopen previously resolved questions, as the only resolved issue in this case is the question of whether state cannabis laws may be enforced on Indian country in California under PL 280, which is not implicated in the new claims. There would also be no undue delay because discovery has yet to begin.

Mendocino Defendants additionally argue that the new claims should be stricken because they are irreconcilable with the dismissed claims and the new allegations contradict previous "judicial admissions" in the FAC. (Defs.' Mot. Strike, Dkt. 75, at 13–16, 20.) However, it is not necessarily true that the new claims are contradictory to the FAC, nor would such contradiction be sufficient to warrant striking the claims. It is possible that both claims could be pled at the same time based on the same facts—for example, Plaintiffs could argue that the warrants were invalid on their face because their invocation of state cannabis laws exceeded the magistrate's jurisdiction while also claiming that the warrants were invalid because their true purpose of enforcing local ordinances on the reservation was not disclosed when they were obtained, and that both theories constitute jurisdictional overreach. But even if the claims may not be reconciled, that alone is not sufficient to justify striking them from the complaint. *See PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856 (9th Cir. 2007) (holding that absent a finding of bad faith, "there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations."). Mendocino Defendants have not alleged that Plaintiffs' claims are contradictory because the SAC was filed in bad faith, and they have not argued that the new claims are frivolous or otherwise attributable to improper conduct by Plaintiffs. Mendocino Defendants' accusations of "gamesmanship" by Plaintiffs do not constitute

---

*City of Buena Park*, No. SACV150007DOCRNBX, 2015 WL 12765111, at *5 (C.D. Cal. Nov. 9, 2015), it is not appropriate to strike the claims here on that basis. For one, the newly alleged claims here are not only based on new legal theories but have essentially no overlap with the legal issue resolved by the court that formed the basis for dismissal in the prior order. The claims also involve new facts that are relevant and material to the other claims in addition to the newly alleged claims.

United States District Court
Northern District of California

serious allegations of misconduct, especially considering that parties are allowed to take subsequent contradictory stances in pleadings, and Defendants offer no reason to believe that Plaintiffs' failure to comply with the Federal Rules was an intentional trick rather than a mistake or oversight.

Claims One and Two are not immaterial, specious, or impertinent, and allowing them to remain in the SAC is not unduly prejudicial to Defendants. Additionally, the claims do not fall into the remaining categories of material suitable for a court to strike—the claims and their related factual allegations are not scandalous or redundant, and they are not deficient defenses. For the same reasons, those elements of the other claims that rely on the new allegations and legal theory are not immaterial, specious, impertinent, or otherwise properly strikable. Granting Mendocino Defendants' Motion to Strike is also disfavored because they ask the court to strike entire claims for relief, which the Ninth Circuit has generally held to be an improper use of Rule 12(f). *See Whittlestone, Inc.*, 618 F.3d at 973–74 (holding that Rule 12(f) should not be used to strike claims for damages on the grounds that those claims are precluded as a matter of law). While disobeying a court order can be adequate grounds for dismissal, *see Ferdik v. Bonzelet*, 963 F.2d 1258 (9th Cir. 1992), such a sanction is not required and is not warranted here based on the facts or history of this case. The court understands and is sympathetic to Mendocino Defendants' frustration with Plaintiffs' filing of an amended complaint that exceeds the scope of the prior Order without their consent or leave of the court as required by the Federal Rules; however, striking the unauthorized claims is not an appropriate remedy.

Construing the SAC as a request to file the amended complaint, the court grants Plaintiffs leave to amend. In general, leave to amend should be freely granted and "generally shall be denied only upon showing of bad faith, undue delay, futility, or undue prejudice to the opposing party." *Chudacoff v. Univ. Med. Ctr. of S. Nevada*, 649 F.3d 1143 (9th Cir. 2011) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)). Given the early stage of this case, the discovery of new facts, the importance of these issues to the Tribe and in Indian law more generally, and the lack of any showing of bad faith, undue delay, futility, or undue prejudice, amendment of the claims is

10

warranted.[5] Plaintiffs are issued a final reminder to comply with the Federal Rules in the future; however, for the foregoing reasons, striking Claims One and Two and their related elements in the other claims is not a proper mechanism for disposing of the claims at this time. As such, Mendocino Defendants' Motion to Strike is DENIED.

**2. Motion to Dismiss under Rule 12(b)(6)**

In the alternative to striking the claims from the SAC, Mendocino Defendants ask the court to dismiss Claims One through Seven and Nine through Twelve for failure to state a claim. Defendants' argument for dismissal is essentially the same for all claims: Plaintiffs cannot establish that the warrants issued were invalid as a matter of law, and their Claims One through Seven and Nine through Twelve are wholly dependent on the invalidity of the warrants and must therefore be dismissed. (Defs.' Mot. Strike 22.) Defendants make the following arguments: (1) the warrants are facially valid because there is probable cause related to the cannabis law violations, and certain elements mentioned by Plaintiffs like the code sections cited in the warrants, the presence of officials from other agencies during the searches, the lack of arrests or charges brought against Individual Plaintiffs, and the subjective motives of the officers are unrelated to the warrants' facial validity; (2) Plaintiffs cannot state a claim based on judicial deception because sufficient probable cause existed for the cannabis offenses, and the alleged omissions and falsehoods have no bearing on that probable cause analysis and thus are not material to whether the warrant would have issued; and (3) pretext legal standards do not apply because the alleged administrative searches took place under a valid criminal warrant, which has a higher standard for probable cause than administrative warrants, and there is no legal basis for making pretext arguments in reverse. (Mot. Strike 23–29; Def.'s Reply, Dkt. 80, 3–7.)

Defendants then argue that, since they have established the validity of the search warrants, it follows that all the referenced claims fail because they are entirely dependent on the search warrants' invalidity. In particular, they argue that Claims One, Two, and Three must be dismissed because they are entirely premised on the warrants' invalidity due to judicial deception; that Claim

---

[5] The court examines in detail the futility element in the following section analyzing whether the SAC fails to state a claim under Rule 12(b)(6).

United States District Court
Northern District of California

Four must be dismissed to the extent that it is based on Defendants' liability for using deceptive search warrants; that Claim Seven should be dismissed because it relies only on Defendants' duty of care to be truthful in search warrant affidavits and conduct searches under valid search warrants; that Claim Nine should be dismissed because officials may detain occupants of a premises during a search pursuant to a valid search warrant; that Claim Ten should be dismissed because public employees are not liable under Cal. Gov. Code § 821.8 for entry onto property that is authorized by a valid search warrant; that Claim Eleven should be dismissed because property destroyed subject to a valid search warrant cannot form the basis for a conversion claim; and that Claims Six and Twelve "partially rely upon Plaintiffs' ability to establish the invalidity of the warrant" and "should be dismissed to the extent they rely on the invalidity of the warrants." (Defs.' Mot. Strike 29–32.) Plaintiffs respond that their allegations are sufficient to support a claim for judicial deception at the motion to dismiss stage, and that the claims should not be dismissed because they do not rely solely on the judicial claim and Defendants make no argument about the remaining facts or legal theories. (Pls.' Resp., Dkt. 77.)

As an initial matter, Mendocino Defendants' argument that a heightened pleading standard applies to judicial deception claims is contrary to law. Defendants rely on *Branch v. Tunnell*, 937 F.2d 1382, 1387 (9th Cir. 1991), to support their argument that a heightened pleading standard applies, but the Ninth Circuit expressly held that *Branch* is no longer good law in *Galbraith v. County of Santa Clara*. 307 F.3d 1119, 1125 (9th Cir. 2002) ("[W]e must conclude that *Branch I* and *II* are no longer good law to the extent that they require heightened pleading of improper motive in constitutional tort cases."), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *Galbraith* recognized Ninth Circuit authority that "government investigators may be liable for violating the Fourth Amendment when they submit false and material information in a warrant affidavit"; in the absence of a heightened pleading standard for these claims, the court held that "a § 1983 plaintiff must show that the investigator 'made deliberately false statements or recklessly disregarded the truth in the affidavit' and that the falsifications were 'material' to the finding of probable cause." 307 F.3d at 1126 (quoting *Hervey v. Estes*, 65 F.3d 784, 790 (9th Cir. 1995)). Accordingly, Plaintiffs do not have to allege facts with additional

specificity so long as they comply with the pleading requirements set forth in *Iqbal* and *Twombly*.

Next, the court is not persuaded by Defendants' arguments that dismissal of the claims based on the warrants' invalidity is appropriate at this time. To state a Fourth Amendment claim under Section 1983 for liability based on judicial deception, Plaintiffs must allege facts showing (1) that the warrant affiant intentionally or recklessly made false statements in the affidavit and (2) that the false statements were material to the probable cause finding. *Galbraith*, 307 F.3d at 1126. Plaintiffs allege in the SAC that the true purpose of the searches was to improperly enforce local codes and state environmental law rather than to enforce criminal law, (SAC ¶¶ 138–47), that the search warrant affidavits did not identify this type of enforcement as their true purpose nor identify the land to be searched as Indian country, (SAC ¶¶ 147, 103–04), that Defendant Pryor "knowingly submitted a misleading affidavit to obtain a search warrant he knew could not lawfully be executed on trust land," (SAC ¶ 175), and that all three searches occurred under warrants obtained through similar omissions or falsehoods, (SAC ¶ 105).

The court finds that Plaintiffs have stated enough facts to sufficiently allege that the search warrants violated the Fourth Amendment. In addition to their cannabis-specific elements, the warrants also authorize the investigation and seizure of property related to statutory violations that may not otherwise have been authorized in Indian country. For example, two search warrants used in the searches of Individual Plaintiffs' property allow for seizure of property described as "heavy equipment, earthwork and land alteration activities" and "deleterious material placed in or near state waterways," and they authorize searches by officers from other government agencies with expertise in building codes, environmental health, and water rights to investigate state business licensing and water code violations, among others.[6] (SAC Ex. F at 6–7; SAC Ex. J at 13–14.)

---

[6] Defendants' argument that the presence of officers from other agencies does not invalidate the search is based on caselaw establishing that officers executing search warrants may bring along officers from other agencies or jurisdictions without exceeding the scope of their warrant when they believe that those officers will help discover evidence of a crime and when they do not search beyond the bounds of the initial search warrant. *See, e.g.*, *United States v. Ewain*, 88 F.3d 689 (9th Cir. 1996) (holding in case where officer properly executed warrant related to narcotics trafficking but brought along postal inspector without explicit authorization that "it no longer matters that the invited-along officer was looking for what he found, which thing was not described in the warrant. What matters is whether the officers looked in places or in ways not permitted by the warrant."); *People v. Carrington*, 211 P.3d 617 (Cal. 2009) ("Officers from another jurisdiction may accompany officers conducting a search pursuant to a warrant . . . even when the officers

Plaintiffs have alleged that state and local officials do not have jurisdiction to enforce these types of local land use and state environmental provisions on the reservation but that Defendants nevertheless wanted to enforce them on tribal land as part of a multi-county coordinated effort, and Defendants have not argued otherwise for either proposition. Search warrants that exceed the scope of probable cause and search warrants that exceed the issuing magistrate's jurisdiction violate the Fourth Amendment. *See United States v. Henderson*, 906 F.3d 1109, 1117 (9th Cir. 2018) ("[A] warrant purportedly authorizing a search beyond the jurisdiction of the issuing magistrate judge is void under the Fourth Amendment"); *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 857 (9th Cir. 1991) ("The scope of the warrant, and the search, is limited by the extent of the probable cause. . . . probable cause must exist to seize all the items of a particular type described in the warrant"); *Blight v. City of Manteca*, 944 F.3d 1061 (9th Cir. 2019) ("To be reasonable under the Fourth Amendment, a search warrant must not be overbroad; its breadth must be limited to the scope of the probable cause on which the warrant was based."). Moreover, an officer may be liable for a search warrant exceeding probable cause if the overbroad warrant is the result of judicial deception. See *Sinclair v. City of Grandview*, 973 F. Supp. 2d 1234, 1252 (E.D. Wash. 2013) ("An officer would not be entitled to qualified immunity with regard to an overbroad search warrant if the overbroad warrant was issued as a result of judicial deception."), *aff'd sub nom. Sinclair v. Akins*, 696 F. App'x 773 (9th Cir. 2017). As such, Plaintiffs have plausibly alleged that the omission that the search locations were part of the reservation was intentional to obtain a warrant exceeding any cannabis-based probable cause that otherwise would not have been issued as written.[7] They have also plausibly alleged that the search

---

lack probable cause to support issuance of their own search warrant" when the initial search warrant is supported by probable cause and is not mere pretext for the accompanying officers). This line of cases is not relevant to the case here, however, because there is no question that the warrants here authorized the presence of representatives from other agencies. Instead, the issue is whether the warrant exceeded its jurisdiction and probable cause by authorizing the presence of agencies with no regulatory power on the reservation to investigate violations of code sections inapplicable to the reservation that could otherwise not be enforced there.

[7] Mendocino Defendants make a strong argument that any claims premised on liability via judicial deception cannot stand because probable cause remains for the cannabis offenses even after the alleged falsehoods and omissions in the affidavit are cured. Defendants contend that the key facts in the warrant affidavits were the number of greenhouses, the estimates of the number of plants within, the aerial surveillance suggesting that

14

warrants exceeded the scope of the issuing magistrates' jurisdiction. Defendants have not presented sufficient reasons why these elements of the search warrant, which relate directly to the items to be seized, and the alleged omissions justifying those parts of the search are not material. Moreover, only two of the three warrants are attached to the complaint, only one of which includes the probable cause affidavit, and the wording and basis of the third warrant is presumed but unknown. The issue of materiality thus cannot be resolved at this stage and Plaintiffs' allegations are sufficient to state a claim that the affidavit omissions were intentional and material.[8] As such,

---

the plants inside were cannabis plants, and that the total number of cannabis plants far exceeded the legal limit per person. (Defs.' Mot. Strike; Defs.' Reply.) California state courts and federal courts have repeatedly found that police officers have probable cause for cannabis violations if they see an amount of cannabis that they rationally believe to be more than could ever be reasonably related to someone's medical needs; whether they have been shown a valid medical card or exemption and whether the people engaging in possession or cultivation are in compliance with local ordinances has no bearing on this probable cause analysis. *See, e.g.*, *Oceanside Organics v. Cnty. of San Diego*, 341 F. Supp. 3d 1129, 1137–42 (S.D. Cal. 2018) (if the officer had cause to believe that the plaintiffs had more than the maximum number of plants allowed under state law at the time, a warrant could issue regardless of whether plaintiffs had demonstrated a medical exemption); *Littlefield v. Cnty. of Humboldt*, 159 Cal. Rptr. 3d 731, 739 (Cal. Ct. App. 2013) (even when the officer was shown a medical exemption, "the sheer quantity of marijuana under cultivation could lead a reasonably prudent officer to conclude that plaintiffs' production far exceeded their medical needs"); *Johnson v. City of Atwater*, No. 119CV00237DADSAB, 2019 WL 2493271 (E.D. Cal. June 14, 2019) (informing an officer of the existence of a medical exemption is not sufficient to destroy probable cause), *report and recommendation adopted,* No. 119CV00237DADSAB, 2019 WL 4201444 (E.D. Cal. Sept. 5, 2019). This caselaw makes it more difficult for Plaintiffs to demonstrate an absence of any probable cause whatsoever if the warrant affidavits sufficiently attest to large numbers of cannabis plants on Plaintiffs' property in excess of reasonable medical needs. That probable cause analysis would not be altered even if the warrants also included a statement indicating that the officers intended to enforce municipal codes—criminal probable cause would still exist. However, there are a few issues which persuade the court that it is too early to find that probable cause existed and dismiss any claims based on the warrants' invalidity for that reason. For one, the court does not have all three warrant affidavits before it. Going off of the allegations in the SAC, the court cannot say that Plaintiffs have not plausibly alleged that the affidavits would not support probable cause when cured of omissions and falsehoods. Plaintiffs have alleged that the warrants omitted the fact that the properties were on Indian land and that this was material for a number of reasons—for example, there are some facts like whether the greenhouses were permitted by the county, which is included in the one affidavit attached to the SAC, that are no longer relevant if the properties' location on the reservation is identified. This could be material depending on the strength of the other factual allegations in the affidavits as to the amount of cannabis observed and the reliability of the observation that the plants are all cannabis. At this juncture, the court finds that Plaintiffs' claims can move forward despite the potential hurdles they may face in the future.

[8] The court finds it necessary to note, however, that some statements in the SAC appear to be insupportable in light of the court's prior Order. For example, the first claim characterizes the dispute between the parties as follows:

> Plaintiffs contend that PL 280 did not grant Defendants authority to enforce local civil/regulatory laws against Indians on their Reservation and that the County ordinances relied on by the Defendants are civil/regulatory in nature. Defendants contend that they have jurisdiction to obtain search warrants and destroy property on trust allotments based on alleged violations of California's cannabis laws. A judicial declaration is necessary to

the court declines to dismiss Claims Three through Seven and Nine through Twelve.

In addition, Mendocino Defendants' argument that many of the claims should be dismissed because they are fully reliant on the warrants' invalidity is not supported by the record. Like the FAC, the SAC is largely centered around alleged jurisdictional issues that invalidate the search warrants, but it also includes many additional allegations extending beyond the validity of the warrants (and extending beyond the warrants' validity with respect to a finding of probable cause). In particular, the SAC contains factual allegations supporting claims based on the contention that the execution of the warrants was unreasonable and that the search exceeded the warrant, along with other similar allegations. For example, Plaintiffs allege that Defendants destroyed their property without following the procedures in the warrant, destroyed property beyond what was necessary to effectuate the warrant, and used tactics intended to threaten them. (*See, e.g.*, SAC ¶¶ 80–81, 89, 100, 76.) The allegations related to the reasonableness of the execution of the warrants, along with other factual allegations and theories of liability unrelated to the warrants' validity, are part of Claims Three, Four, Six, Seven, Nine, Ten, Eleven, and Twelve. Beyond their contention that the warrants are facially valid, Defendants make no legal argument addressing these allegations and whether Plaintiffs have stated a claim under these theories. For this reason, the court declines to dismiss Claims Three, Four, Five, Six, Seven, Nine, Ten, Eleven, and Twelve.

Finally, Defendants argue that Plaintiffs' claims are insufficient under a Fourth Amendment analysis, but this does not sufficiently address Claims One and Two, which are not brought pursuant to the Fourth Amendment and which contain multiple legal bases. For example, it is not clear from Defendants' arguments that no jurisdictional violation can be found even if the warrants are supported by probable cause. Or, as another example, Defendants do not address

---

resolve this dispute.

(SAC ¶ 151.) However, under the court's previous Order, this does not demonstrate that a dispute exists because Defendants do have jurisdiction to obtain and execute search warrants based on violations of California's cannabis laws, which the court found to be criminal in nature. There are other similar statements throughout the SAC. Defendants' did not ask the court to strike any of these statements specifically, and the court will not expend the resources to find and strike each of these contentions; however, Plaintiffs are reminded that the law of this case currently holds that Defendants have jurisdiction to enforce criminal cannabis codes via searches and seizures on the reservation, and they cannot argue the alternative.

whether the wholesale destruction of Plaintiffs' cannabis plants may not only contravene state law on the preservation of evidence seized via warrant (and exceed the warrant itself) but may also infringe on the Tribe's sovereignty by not giving full faith and credit to the Tribe's Medical Use Ordinance under California Health and Safety Code Section 11479. Overall, these claims contain multiple possible bases going beyond the warrants' probable cause or ultimate validity, and Defendants have not addressed these legal arguments at all. As such, the court declines to dismiss the claims at this time.

**CONCLUSION**

The court retroactively grants Plaintiffs leave to amend to the current SAC. The SAC contains many allegations and legal bases supporting the claims against Defendants, and Defendants' argument that nearly all of these claims must be dismissed because the SAC cannot and does not sufficiently allege that the warrants were invalid is not supported by the language of the SAC. Plaintiffs' allegations are sufficient to state their claims. Mendocino Defendants' Motion to Strike or, in the Alternative, Dismiss the SAC is **DENIED**.

**IT IS SO ORDERED.**

Dated: June 16, 2026

ROBERT M. ILLMAN
United States Magistrate Judge

United States District Court
Northern District of California

17