UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| ROUND VALLEY INDIAN TRIBES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MATT KENDALL, et al.,<br><br>Defendants. | Case No.  25-cv-03736-RMI<br><br>**ORDER GRANTING PLAINTIFFS'<br>MOTION FOR ENTRY OF<br>JUDGMENT**<br><br>Re: Dkt. No. 67 |

Plaintiffs have filed a Motion for Entry of Judgment under Rule 45(b), asking the court to enter judgment on the dismissal of Plaintiffs' first two claims in a previous Order. (Dkt. 67.) Defendants Humboldt County, Sheriff William Honsol, and Deputy Sheriff Justin Pryor ("Humboldt Defendants") filed a response in opposition, (dkt. 68), and Defendants Mendocino County and Sheriff Matthew Kendall ("Mendocino Defendants") filed a separate response in opposition, (dkt. 69); Defendant Sean Duryee[1] joined both responses, (dkt. 70). Plaintiffs have filed their replies, (dkts. 72 & 73), and the Motion is ripe for adjudication.

**LEGAL STANDARD**

Under Rule 54(b) of the Federal Rules of Civil Procedure, a court "may direct entry of a final judgment as to one or more, but fewer than all, claims or parties" if the court determines that there is no just reason for delay. The Supreme Court has laid out a two-step process for analyzing requests for entry of judgment under this rule: (1) the court must first determine that there has been a "final judgment," and (2) the court should then determine whether there is any just reason

---

[1] Since filing this Motion, Plaintiffs have filed a Second Amended Complaint which no longer brings any claims against Defendant Duryee.

for delay. *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7–8 (1980). At the first step, "[i]t must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Id.* at 7 (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)). At the second step, "a district court must take into account judicial administrative interests as well as the equities involved." *Id.* at 8.

The Ninth Circuit has directed district courts that Rule 54(b) certification is proper if it will aid in the "expeditious decision" of the case and "prevent piecemeal appeals in cases which should be reviewed only as single units." *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 797–98 (9th Cir. 1991)) (first quoting *Sheehan v. Atlanta Int'l Ins. Co.*, 812 F.2d 465, 468 (9th Cir. 1987), then quoting *McIntyre v. United States*, 789 F.2d 1408, 1410 (9th Cir. 1986)). Rule 54(b) certification is disfavored when there is great similarity of legal and factual issues between certified claims and claims still proceeding in front of the trial court; however, certification of claims with overlapping facts may still be appropriate, especially in complex cases and cases where legal and factual issues may be efficiently separated. *See Wood v. GCC Bend, LLC*, 422 F.3d 873, 881 (9th Cir. 2005) (recognizing that certification had been upheld in cases with counterclaims or where "the case is complex and there is an important or controlling legal issue that cuts across (and cuts out or at least curtails) a number of claims."); *Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir. 1987) (upholding certification where the district court "efficiently separated the legal from the factual questions"); *Sheehan v. Atlanta Int'l Ins. Co.*, 812 F.2d 465, 468 (9th Cir. 1987) ("The Rule 54(b) claims do not have to be separate from and independent of the remaining claims."). District courts should use a "pragmatic approach focusing on severability and efficient judicial administration." *Cont'l Airlines*, 819 F.2d at 1525. Only after considering juridical concerns does the court consider whether there is any just reason for delay, focusing on traditional principles of equity. *See, e.g.*, *Gregorian v. Izvestia*, 871 F.2d 1515, 1519 (9th Cir. 1989) (the second step of analysis, courts assess the balance of equities and "focus on traditional equitable principles such as prejudice and delay.").

**DISCUSSION**

This matter involves a case brought by Plaintiffs April James, Eunice Swearinger, Steve Britton (collectively, "Individual Plaintiffs"), and the Round Valley Indian Tribes ("the Tribe"), originally against Mendocino Defendants, Humboldt Defendants, and California Highway Patrol and Commissioner Sean Duryee (collectively, "CHP Defendants"). (Compl., Dkt. 1.) The CHP Defendants are no longer included as defendants in the Second Amended Complaint. (SAC, Dkt. 71.) The court previously dismissed two claims from the First Amended Complaint, as well as any elements of the other claims that relied on the dismissed claims. (Order, Dkt. 64.) Plaintiffs now request that the court "enter partial final judgment under Rule 54(b) as to the dismissal with prejudice of the First and Second Claims for Relief, and direct entry of judgment on those claims so that Plaintiffs may seek immediate appellate review." (Pls.' Mot. Entry of J., Dkt. 67, at 11.)

1. **Final Adjudication[2]**

First, the court must determine whether there has been a final judgment entered in this case such that Rule 54(b) certification is appropriate. In the Order ruling on the motions to dismiss, the court dismissed with prejudice Plaintiffs' Claims One and Two in the First Amended Complaint ("FAC"). The court also dismissed those elements of the remaining claims which relied on the legal theory underpinning those claims. Plaintiff argues that this Order was a final judgment because it fully resolved the claims based on the Tribe's regulatory authority over cannabis under 28 U.S.C. § 1360(a) ("Public Law 280" or "PL 280") and pursuant to tribal sovereignty, which are distinct from the other claims in the case and which asked for unique relief. (Pls.' Mot. Entry of J. 4–6.) Humboldt and Mendocino Defendants argue that this Order did not constitute a final judgment because it did not clearly dismiss the claims against the Humboldt Defendants (who did not move to dismiss), because it did not terminate the litigation between the parties involved, and because it dismissed some parts of the remaining claims. (Humboldt Resp., Dkt. 68; Mendocino

---

[2] It is undisputed that Rule 54(b) applies to this action. The First Amended Complaint brought eight separate causes of action against seven defendants; the Second Amended Complaint brings twelve causes of action against five defendants. In addition, some of the claims are premised on conduct surrounding obtaining and executing the search warrants at issue, while others are based on alleged retaliatory actions after the Tribe protested the use of the warrants on the reservation. The threshold requirement that the case involve multiple claims and multiple parties is thus met.

United States District Court
Northern District of California

Resp. 4–6, Dkt. 69.)

First, to the extent that Mendocino and Humboldt Defendants argue that the FAC Claims One and Two are still active against Humboldt Defendants, the court will put to rest any ambiguity in the Order on the motions to dismiss. Claims One and Two were dismissed with prejudice based on the court's holding that the underlying legal theory—that Defendant's enforcement of California's Health and Safety Code cannabis provisions was unlawful under Public Law 280 and an impermissible intrusion on Tribal sovereignty—was invalid. This theory applied identically to the Humboldt and Mendocino Defendants. As such, the court clarifies that the original order dismissed Claims One and Two of the FAC as to all Defendants, including Humboldt Defendants. These two causes of action are not operative for any Defendant.

Second, the court finds Defendants remaining arguments against the finding of a final judgment unavailing. It is not necessary for a judgment to terminate the litigation between the parties involved to qualify for Rule 54(b) certification. *See, e.g.*, *Cont'l Airlines, Inc.*, 819 F.2d at 1524–25 (upholding certification even though the district court order "eliminated none of the parties and left open potentially full recovery in both of Continental's ultimate areas of loss"); *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 574–75 (9th Cir. 2018) (upholding certification of judgment on claim that did not terminate the litigation between the parties). Moreover, the dismissal of the first two causes of action was a final adjudication on that legal theory, precluding Plaintiffs from seeking the declaratory and injunctive relief sought by those claims. Claims One and Two were legally distinct from the other claims and asked for unique relief, and the court's prior ruling fully resolved these claims such that Plaintiffs can no longer pursue this avenue for relief—the court has therefore decided the ultimate disposition of a cognizable claim for relief, meeting the requirements for a final adjudication.

**2. Severability and Efficiency**

The finding of a final adjudication is tied to consideration of severability of the claims and judicial efficiency, especially when the judgment would not resolve all claims between the parties. The court first evaluates whether the dismissed claims are separable from the remaining claims before turning to the question of efficiency.

United States District Court
Northern District of California

4

Claim One was based on Defendants' "unlawful assertion of jurisdiction" under Public Law 280, alleging that Defendants were not authorized to enforce California's cannabis laws as codified in California's Health and Safety Code on Plaintiff Tribe's reservation because those laws are civil/regulatory in nature. It asked for a declaration that Defendants could not enforce those laws on the reservation, injunctive relief enjoining Defendants from related future enforcement actions, and claimed damages on the part of Individual Plaintiffs. Claim Two was for interference with tribal sovereignty, alleging that Defendants' unlawful actions impermissibly interfered with the Tribe's right to govern itself and enforce its own cannabis laws. This cause of action requested injunctive relief to prevent Defendants from enforcing the related provisions of the California Health and Safety Code on the reservation.

In this court's Order on the motions to dismiss, the court found that (1) the laws (and conduct) at issue were the Health and Safety Code provisions concerning cannabis, especially cannabis cultivation, sale, and medical use, based on the FAC and attached documents; (2) the California Health and Safety Code's cannabis provisions were criminal rather than civil/regulatory; (3) Defendants therefore had jurisdiction to enforce state cannabis laws on the reservation under Public Law 280; and (4) tribal sovereignty concerns did not override Defendants' jurisdiction to investigate and enforce those criminal laws. (Order, Dkt. 64, at 8–21.) Based on these findings, the court dismissed the first and second claims with prejudice. The court also dismissed "any elements of other claims that rely on the contention that the underlying searches were illegal because Defendants lacked enforcement jurisdiction." (Order, Dkt. 64, at 21.) This foreclosed, for example, those parts of the Plaintiff's Section 1983 claim premised on Defendants' pattern of knowing disregard for their lack of jurisdiction under Public Law 280, those parts of the negligence claim based on Defendants' duty of care to assess their jurisdiction under Public Law 280, and other similar claim elements.[3]

That Order separated the legal question underpinning the first two claims—whether the California cannabis laws at issue were "criminal" under PL 280—from the legal and factual issues

---

[3] In that Order, the court also dismissed Plaintiffs' fourth claim against the Mendocino Defendants with leave to amend and dismissed the third claim against Defendant Duryee without prejudice.

United States District Court
Northern District of California

United States District Court
Northern District of California

of the remaining claims (e.g. whether Defendants' conduct during the execution of the warrants was reasonable under the Fourth Amendment, etc.). While some of the remaining claims originally contained elements related to the dismissed claims, nothing remained after the Order that concerned Defendants' jurisdiction to enforce California cannabis law on the reservation.

Since that Order was issued, Plaintiffs have submitted a Second Amended Complaint ("SAC") with new claims under Public Law 280 jurisdiction and infringement of tribal sovereignty. (SAC, Dkt. 71.) In a separate Order, the court allowed Plaintiffs to move forward with these claims, finding them sufficiently different from the dismissed claims and finding that they survived Mendocino Defendants' motion to dismiss as currently alleged. (Order, Dkt. 83.) That Order describes the claims and their differences in detail, but in summary, the new claims are premised on allegations that Defendants obtained the search warrants through material omissions in order to enforce local ordinances and state environmental laws on the reservation in contravention of PL 280's jurisdictional limits and principles of tribal sovereignty. The new claims also make a variety of arguments related to but distinct from the arguments about the truthfulness of the affidavits and validity of the warrants, including that Defendants violated 28 U.S.C. § 1360(b) because they attempted to regulate Indian land, property, and water rights; that Defendants violated 28 U.S.C. § 1362(c) and tribal sovereignty because they did not give full force and effect to the Tribe's marijuana ordinances; that Defendants violated the American Indian Agricultural Resource Management Act, 25 U.S.C. § 3701 *et seq.*; and that Defendants' failure to notify or coordinate with Tribal police infringed on tribal sovereignty. (SAC ¶¶ 42, 137–168.)

None of the new claims in the SAC are related to, dependent on, or tied to the dismissed claims in any way. The new claims alleging violations of PL 280 jurisdiction and tribal sovereignty rely on different legal theories that entail different analysis than the dismissed legal theory in the FAC Claims One and Two—specifically, they are based on statutory language and caselaw finding that PL 280 does not authorize enforcement of local land use codes on tribal land and on statutory provisions limiting state encumbrances on tribal property. The new claims require fact-based inquiries into how Defendants obtained the warrants, why they obtained the warrants, the basis for the warrants, and how they conducted the searches. The dismissed claims, in contrast,

United States District Court
Northern District of California

present almost a purely legal question, with only one factual finding derived from the FAC that is distinct from the fact-finding inquiry necessary for the currently pending claims. None of the new theories involve the question of whether Defendants could enforce California's statutory cannabis limitations on the reservation, or any question about whether a code section is criminal or regulatory in nature. Instead, they involve different legal questions, different legal standards, and different factual inquiries; that the dismissed claims are based on the same general statute as the currently pending claims does not render them inseparable. Any appeals related to the claims currently pending before the court will not present the court of appeals with duplicate legal or factual issues.

The dismissed claims are severable from the remaining issues, but they influence the remaining claims because the viability of the dismissed legal theory determines the scope of the lawsuit and whether Plaintiffs can bring certain elements of other claims. The basic dispute at the heart of this case is disagreement over what laws Defendants are allowed to enforce on the Tribe's reservation against Tribal members. The outcome of Plaintiffs' legal theory that state cannabis laws are civil and cannot be enforced will significantly alter not only the relief Plaintiffs can seek but also the legal and factual arguments they can make in their remaining constitutional and tort claims. Moreover, entering judgment on these claims will serve the interest in efficiency because it will prevent the possibility that this case will be fully litigated under a framework that is later reversed. If the dismissed claims are revived on appeal only after the resolution of the entire case before the district court, it is possible (if not likely) that some of the resolved claims will be remanded for reconsideration based on the revival of the dismissed theory, and that the analysis and resolution of the new claims may change or become moot if the dismissed claims are revived. Overall, the legal theory addressed in the first two claims was fully resolved by this court's prior Order; the dismissed claims involve a single primary legal question about the status of state cannabis law that has been severed from the remaining claims; it is not likely that duplicate appeals will be made to the Ninth Circuit if judgment is entered on these claims; and it is possible that delaying entry of judgment will create additional and unnecessary duplicate work in the future. As such, the court has entered a final adjudication and it serves the interest in judicial

efficiency to enter judgment under Rule 54(b).

### 3. Balance of Equities

Having determined that it serves the judicial interest in efficient administration to enter Rule 54(b) judgment, the court must now consider the balance of the equities involved in entering judgment in this case. Plaintiffs argue that it is important for entry of judgment to be granted not only because the viability of the dismissed legal theories impacts their remaining claims, but also because these claims deal with issues of tribal sovereignty and jurisdiction that are highly important to Plaintiffs and require swift action to prevent ongoing injury. Mendocino Defendants argue that it would be prejudicial to all Defendants if judgment were entered and the litigation proceeded on two levels. However, this potential does not justify delay in this case. The dismissed claims primarily ask for injunctive relief to prevent continued jurisdictional overreach and infringements on tribal sovereignty, and delaying these issues until the resolution of the remaining constitutional and tort claims is not justified, particularly where elements of those remaining claims might change depending on the ultimate outcome of the dismissed legal theories. Moreover, Defendants may seek a stay of this case during the appeal. It would burden all parties if this case were to proceed to a resolution only to be reopened in the future because of a change to the law of this case that could be resolved now. The possibility that there is an ongoing injury to the Tribe and its members because Defendants' repeated enforcement actions are unlawful is serious. As such, the equities weigh in favor of Plaintiffs.

### CONCLUSION

Plaintiffs' Motion for Entry of Judgment under Rule 54(b) is **GRANTED**. A separate judgment shall issue.

**IT IS SO ORDERED.**

Dated: June 16, 2026

ROBERT M. ILLMAN
United States Magistrate Judge